## Jeremiah Odum, Administrator, Appellee, v. Corn Products Refining Company, Appellant.

1. PRACTICE—*exclusion of widow and children in action for death.* The widow and children of deceased cannot be excluded from the court room in an action for death, though their presence will enlist the sympathy of the jury, since they are parties interested in the result of the suit.

2. NEGLIGENCE—*res ipsa loquitur.* In an action for death from injuries in an explosion, when it is alleged that because of defendant's negligence a fire occurred in his feed house which reached an elevator building, causing the explosion, plaintiff, to invoke the doctrine of *res ipsa loquitur*, must show not only that the elevator building was under defendant's control but also that the agency causing the explosion arose or came out of a building also under defendant's control.

3. NEGLIGENCE—*res ipsa loquitur.* To invoke the doctrine of *res ipsa loquitur*, it must appear that the agency causing the accident is solely under the defendant's management.

4. NEGLIGENCE—*sufficiency of evidence.* In an action for death caused by an explosion in an elevator building, the negligence alleged was in permitting a fire to occur in a feed house, which reached the elevator building through a cyclone pipe connecting them. If the fire occurred in the feed house, it was apparently caused by some hard substance, passing through the mill, but one of plaintiff's witnesses testified that nothing had gone through, and the evidence of another witness indicated that the fire did not originate in the feed house. The evidence disclosed that the feed house and machinery were in good condition, and no negligence was shown in its construction or operation. The small verdict indicated that it was the result either of a compromise or of doubt

in the minds of the jury. *Held*, that a verdict for plaintiff would be set aside on appeal.

Action in case for personal injuries. Appeal from the City Court of Granite City; the Hon. J. M. BANDY, Judge, presiding. Heard in this court at the March term, 1912. Reversed and remanded. Opinion filed October 7, 1912.

DAN McGLYNN, for appellant.

THOMAS STALLINGS, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

The trial of this case resulted in a verdict and judgment for the plaintiff in the amount of one thousand dollars, to reverse which judgment the appellant prosecutes this appeal.

On August 7, 1910, and prior thereto the appellant had been engaged in the business of extracting oil from the kernels of corn from which syrups are manufactured and in preparing the grain of corn, after the kernel had been extracted, for feed. Several buildings were used by the appellant in this work but more particularly a building known as the feed house, upon the first floor of which was located a mill, and the other building was known as the feed elevator and consisted of a six story brick building and was distant about one hundred fifty feet from the feed house. The two buildings are connected by an eighteen inch galvanized iron pipe extending from the outer wall of the lower floor of the feed building along and near the mill located thereon, thence to the upper floor of the elevator building at an angle of about forty-five degrees and there opens in to a bin. Near the mill are iron cylinders called dryers which are set at an angle and permit the feed, when in a proper state, to fall out, from whence it is lifted by a perpendicular pipe and deposited in a cyclone on top of the feed house and immediately above the mill called the foose mill, where

it falls by gravity into the mill; at intervals catcher boxes are placed for the purpose of allowing nails and pieces of metal to fall into the same, by gravity, as the feed is taken along through the pipe by the suction of a fan. The foose mill has two heavy iron disks, or grinders, about thirty-six inches in diameter fastened to shafting so that they revolve in opposite directions, the feed going in at the center and being thrown out at the bottom, and are enclosed in a cast iron frame to which is attached a lever used to separate the disks; after the feed has been taken by the fan through the pipe containing the catcher box and up a perpendicular pipe and across to the cyclone, which is some distance immediately above the foose mill, it is allowed to fall by gravity through an opening in the bottom of the cyclone on to the top of a German magnet designed to prevent particles of iron or steel from going into the grinders of the mill, and the feed when ground falls by gravity into an eighteen inch galvanized iron pipe heretofore described and called the intake pipe, this pipe is screened on the outside and has an opening on the inside of the wall which is also screened, and in fair weather the outside is used for the intake of air and in bad weather the inside is used. The feed is taken through this blow pipe by the use of the fan to the top of the elevator building where it is deposited in a hopper and there sacked for use.

The deceased, Samuel Batson, as it appears from the evidence had nothing to do with the mill or its operation but he was the foreman and in charge of the elevator and had five or six men under his direction and supervision, caring for the elevator and sacking the feed. The evidence discloses that there was more or less dust connected with the manufacture of this feed stuff, and of the sacking thereof, and that particles of dust collected in the upper stories of the elevator and from this collection of dust it appears that the dust explosion occurred about four o'clock in the afternoon of August 7th, tearing away the upper story and cy-

clone of the elevator building and causing the brick to fall upon the appellee's intestate and injured him, from which injury he afterwards died.

The declaration in this case consisted of four counts but at the close of plaintiff's testimony the first, second and third counts were withdrawn and the case went to the jury upon the fourth count.

The fourth count of the declaration, after setting out the business in which appellant was engaged, and describing the elevator building and feed house, the machinery and the purposes thereof, also that the deceased Samuel Batson was foreman in charge of the elevator building, and that the feed house, food products, machinery and appliances connected therewith were in the exclusive control and management of the defendant and its servants engaged in said feed house, with which the deceased had no connection; it then avers that the defendant so negligently and carelessly operated, handled, managed and controlled said feed house, mill, machinery, connections and appurtenances, that by and through such negligence and carelessness a fire occurred in said feed house and reached the upper floor of the elevator building through the cyclone pipe which connected said elevator building in said feed house as aforesaid, by means whereof an explosion occurred in said elevator building; by means whereof the deceased, who was then and there in the employ of the defendant, in and about the elevator building as aforesaid, while in the exercise of due care and without notice or means of knowledge of danger to him and while so situated in said feed house, food stuff, machinery and appliances, was severely burned, bruised, wounded and injured from the flames of said explosion and the bricks that were hurled from the top of the elevator building by said explosion, from which injuries he afterwards died.

The first complaint made by counsel for appellant is, that the court erred in refusing to grant appellant's motion to exclude the widow and two minor children

of the deceased from the court room during the trial
of the case, and later a motion to exclude the children.
It is argued that the presence of the widow and chil-
dren would have a tendency to create sympathy upon
the part of the jury that would induce the jury to find
a verdict for appellee from sympathy rather than from
the evidence produced in the case. It may be true that
the presence of the widow and these children would
tend to enlist the sympathy of the jury in their behalf,
but the widow and children are interested parties in
the result of this suit; whatever judgment is obtained
belongs to them and we know of no law that prevents
interested persons from being present at the hearing
of their case, even though their unfortunate condition
was such as to enlist the sympathy of the jury, and we
have not been referred by counsel to any case that, as
we think, announces a different principle. The case
of Jones & Adams Co. v. George, 227 Ill. 70, was an
action brought by the plaintiff himself for injuries
that he had received, and he was there allowed to prove
that he was a married man and had three children,
which could have nothing to do with the question as the
court said the damages allowed were only compensa-
tory for the injury received. And the other case re-
ferred to C. P. & St. L. R. R. Co. v. Woolridge, 174
Ill. 334, was where evidence had been admitted that
one of the children of the deceased was a cripple, which
was held to be error as the court said the damages re-
coverable could only be the loss to the estate. We think
these authorities and others cited are not applicable to
the facts in this case for the reasons above stated.

Again, it is contended by counsel for appellant that
as the declaration charges the negligence in the fol-
lowing language, "And the plaintiff avers that the de-
fendant so negligently and carelessly operated, han-
dled, managed and controlled said feed house, the mill,
machinery, connections and appurtenances that by and
through such negligence and carelessness a fire oc-
curred in said feed house and reached the upper floor

of the elevator building through the cyclone pipe which connected said elevator building in said feed house as aforesaid, whereby an explosion occurred in said elevator building, etc.;" that the negligence as alleged is particularized and must be proven as stated, and that because of the particular negligence having been alleged, that the doctrine of *res ipsa loquitur* has no application and cannot be invoked by the appellee. In view of the decision in the case of Chicago City Railway Co. v. Barker, 209 Ill. 321, we are inclined to doubt if this position is well taken, as the acts of negligence alleged are in general terms and the particularizing seems to arise as to the effects of the negligence rather than from the acts themselves; but viewing the case as we do, we do not deem it necessary to determine this question. Under the evidence in this case there is but one theory upon which appellee can recover, and that is to show that the fire originated in the mill house, and we do not understand that counsel for appellee makes any claim for the right of recovery except under the theory that the fire originated in the mill house. In invoking the doctrine of *res ipsa loquitur* it must appear that the agency causing the accident is solely under the management of the defendant for if it is partly under the management of the plaintiff then the doctrine could not be invoked. It is said in the case of Hart v. Washington Park Club, 157 Ill. 15: "Perhaps it may be more accurate to say, that the presumption of negligence arises, not exclusively from the fact that the accident happened, but that it happened under given conditions and in connection with certain circumstances." And in the same case it is said, "But when the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those, who have the management, use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from

want of care   *   *   *''    On page 16 of the same case
the Supreme Court further says, "In Addison on
Torts, (Vol. 1, Sec. 33) the rule is thus stated: "Where
the accident is one which would not, in all probability,
happen, if the person causing it was using due care,
and the actual machine causing the accident is solely
under the management of the defendant, the mere oc-
currence of the accident is sufficient *prima facie* proof
of negligence to impose upon the defendant the onus of
rebutting it." Upon the basis of these authorities
the case of The William Branfoot, in 48 Fed. Rep. 914,
holds, that, "when an unusual and unexpected accident
happens, and the thing causing the accident is in
one's exclusive management, possession or control,
the accident speaks for its self, is itself a witness,
*res ipsa loquitur,* and, in a suit by any one having an
action therefor, the fact of the accident puts on the
defendant the duty of showing that it was not occa-
sioned by negligence on his part." If this doctrine
be true then the mere fact that the explosion took place
in the elevator building, which was under the control
and management of the deceased, Samuel Batson,
would not of itself be sufficient to permit the appellee
to invoke the doctrine of *res ipsa loquitur,* but he must
go further and show that the agency causing the ex-
plosion arose, or came out of the mill building which
was under the control of the defendant; and we think
this fact would have to be established by the appellee
before the doctrine contended for could be invoked,
and before the appellant would be required to rebut
the presumption of negligence. The question then
arises, has it been proven that the fire or spark causing
this explosion originated in the mill building? It is
contended by counsel for appellee that this was a ques-
tion of fact to be determined by the jury; which as a
naked proposition is true but the finding of a fact by
a jury must be based upon competent evidence in the
record.

Counsel for appellant and for appellee, each have

theories, and each have indulged in arguments that are more or less plausible as to their respective theories of this explosion and origin of this fire, but, after all, they are only theories and may or may not present a correct view with reference thereto. It seems to us very clear that if this fire did originate in the mill house it must have been caused by a piece of steel or iron passing through the mill and by reason of the friction caused a spark to be carried through this large galvanized pipe to the elevator, and to the point where the explosion occurred, and for this to have occurred a piece of steel or iron or something of that character must have passed through the mill. The witness L. Graham, introduced by appellee, testified that he was in the mill house and standing close by the mill at the time the explosion occurred and he says that he saw flame coming through the intake pipe immediately after hearing the noise of the explosion; but he states in positive and direct terms that no foreign substance of any kind had passed through the grinder of the mill, and that if it had passed through he could have heard it, and his conclusion as to the way the flame was passing was that it was going from and not towards the elevator; to this, however, we cannot attach very much importance as it is not probable he could tell with accuracy which way the flame was going, but he was plaintiff's witness and positive that nothing went through the grinder, and if this be true, the fire could not have originated in the mill. Another witness, who was the oiler at appellant's mill, testified that he heard the report and saw smoke and that his attention was drawn to it by the report, and that after the time of hearing the report he had taken twelve or fifteen steps from the dryer fan to the mill and it was then that he saw the flame and smoke coming from the pipe. If the testimony of these witnesses indicate anything it is that the fire did not originate in the mill, that it was first discovered in the mill shortly after the report of the explosion.

It is argued by counsel for appellant that the flame could not have passed through this eighteen inch pipe against the current of air produced by the fan. This theory may not appear so reasonable when we remember that this eighteen inch pipe connected with the air from out side of the building and that the moment the explosion occurred the elements would seek their vent in the weakest places, and we do not see why, with the force that appears to have accompanied this explosion, the flame might not have been driven against the current of air and to the outside; but this is not necessary to determine. The only question here is, is there any evidence from which a jury could reasonably say that the fire originated in the mill? The evidence also discloses, so far as we are able to perceive, that the mill and machinery therein were in good condition; that the making of the products and the machinery used were of an approved plan. Nothing is developed by the evidence showing the defendant to be negligent, either in the construction or operation of the mill. The meager allowance made by this verdict indicates to our minds that the verdict was either the result of a compromise or arose from a conviction in the minds of the jurors that it was doubtful if the defendant was to blame; and while this unfortunate accident entails loss on the widow and children, we are unable to say that this defendant is guilty of any negligence that brought about this loss, and we feel that the verdict of the jury is not warranted by the evidence contained in this record, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*