766 F.2d 208
 18 Fed. R. Evid. Serv. 321
 Catherine and Frank HELMINSKI, as Next Friends of Minor Hugh
Helminski, Plaintiffs-Appellants,
v.
AYERST LABORATORIES, A DIVISION OF AMERICAN HOME PRODUCTS
CORP., a Delaware Corporation, Defendant-Appellee.
 No. 83-1726.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 13, 1985.
Decided June 25, 1985.
 
 Thomas H. Bleakley, Brian J. McKeen (argued), Detroit, Mich., for plaintiffs-appellants.
 Konrad D. Kohl (argued), Michael L. Updike, Altero J. Alteri, Farmington Hills, Mich., for defendant-appellee.
 Before ENGEL and KEITH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 Plaintiffs-appellants Catherine and Frank Helminski, as Next Friends of their minor son, Hugh, brought this products liability suit against defendant-appellee Ayerst Laboratories. The Helminskis contended that Hugh's in utero exposure to Fluothane,[1] a surgical anesthetic manufactured by Ayerst, resulted in injury to his developing nervous system. Specifically, they alleged that Ayerst Laboratories was negligent in testing and marketing Fluothane without warning of potential injury to a fetus, breached express and implied warranties that the product was safe for use by operating room personnel in the first trimester of pregnancy, committed fraud and deceit in marketing Fluothane, and should be held strictly liable for marketing the product. The essence of Ayerst's defense was that Hugh's condition was not the result of in utero exposure to its product. After a six-day trial, the jury returned a verdict of no cause of action. The district court denied the Helminskis' subsequent motion for a new trial. From this ruling, the Helminskis appeal.
 
 
 2
 Catherine Helminski was a certified registered nurse anesthetist. During the entire term of her pregnancy with Hugh, she was employed full-time administering anesthesia to patients undergoing surgery. Fluothane was used in over 90% of the 148 surgical procedures in which Mrs. Helminski administered anesthesia. Both parties agree that during the course of the pregnancy Mrs. Helminski was exposed to Fluothane, although they disagree as to the extent of such exposure.
 
 
 3
 Born in September 1966, Hugh began to exhibit signs of developmental retardation at an early age. For example, he had not yet begun to speak as he neared the age of three. Eventually, physicians determined that Hugh was autistic. As a result of this condition, Hugh requires 24-hour a day care; he does not speak, is not toilet trained, and has an extremely low IQ. Hugh's arrested neurological development is permanent and irreversible.
 
 
 4
 The Helminskis raise three issues on appeal. First, they contend that certain references by the trial judge and defense counsel concerning Fluothane's alleged claim-free history were improper and prejudicial. Second, the Helminskis challenge the district court's decision, which was rendered after they had presented most of their witnesses, to bifurcate the proceedings into separate trials on liability and damages. Finally, the Helminskis argue that Hugh's exclusion from the courtroom during the liability portion of the proceedings infringed upon his Seventh Amendment right to a jury trial and his Fifth Amendment right to due process of law.
 
 I.
 
 5
 The trial court's introductory remarks to the jury, made during voir dire, included the following:
 
 
 6
 The defendant contends that this is the first case in which it is claimed that exposure by a pregnant woman to this particular drug in question ... resulted in the birth of a child suffering injury.
 
 
 7
 Similarly, in his opening statement, counsel for Ayerst indicated that the case was the first "anyplace" in which a party alleged that a pregnant woman's exposure to Fluothane in the operating room resulted in "birth to an autistic child." The Helminskis' counsel failed to object to either statement. On appeal, the Helminskis assert that such comments were prejudicial and warrant a new trial.
 
 
 8
 A party may not assert as error the introduction of evidence unless a timely objection is made. Fed.R.Evid. 103(a)(1); see Kokesh v. American Steamship Co., 747 F.2d 1092, 1094-95 (6th Cir.1984). Although a court may review the introduction of evidence in the absence of an objection if it constitutes plain error and affects a party's substantial rights, Fed.R.Evid. 103(d), an important consideration in determining whether appellate review is appropriate is the number of times the allegedly improper evidence was elicited without objection, see United States v. Martin, 757 F.2d 770, 771 (6th Cir.1985) (review under plain error rule discretionary).
 
 
 9
 In this case, counsel for the Helminskis failed to object to the statements of both the trial judge and Ayerst's counsel. Moreover, on two occasions defense counsel asked expert witnesses if they were aware of any other allegations that Fluothane's use resulted in birth defects; the record discloses that no objections were made. In light of the complete failure of counsel to bring before the trial court his objection on this matter, we do not believe that he perceived the issue as one which affected the substantial rights of his client. Cf. Wainwright v. Witt, --- U.S. ----, ----, ----, 105 S.Ct. 844, 858, 859 n. 4, 83 L.Ed.2d 841 (1985) (Stevens, J., concurring). Nor do we believe, as plaintiffs' counsel asserts on appeal, that his failure to object should be excused because he feared that an objection would emphasize the error before the jury. While under limited circumstances an objection might only exacerbate an error in admission of testimony, Brown v. Walter, 62 F.2d 798, 799-800 (2d Cir.1933), counsel is generally not excused from bringing an objection to the court's attention, see Bryant v. Consolidated Rail Corp., 672 F.2d 217, 218-19 (1st Cir.1982). Any other general rule would eviscerate Fed.R.Evid. 103(a)(1). We conclude that, in fact, there was no reason to believe that a timely objection would emphasize Fluothane's alleged claim-free history before the jury. Accordingly, the Helminskis have failed to preserve for review their challenge to the comments related to Fluothane's alleged claim-free history.
 
 II.
 
 10
 Following the testimony of the Helminskis' final expert witness, counsel announced his intention to call Hugh as a witness despite a previous agreement to present Hugh to the jury only in a videotape.[2] Ayerst objected, arguing that Hugh's condition had already been described graphically and, moreover, that there was no dispute concerning the nature of his problems. Essentially, Ayerst perceived that Hugh's presence in the courtroom would prejudice the jury against its case. The Helminskis noted that Hugh would be present in the courtroom for only approximately five minutes to allow the jury to "visualize" him. Further, the Helminskis' attorney asserted that, as a civil litigant, Hugh had a right to be present in the courtroom. In discussing with the parties the possibility of bifurcating the proceedings at this juncture, the court recognized that the case should have been bifurcated, if at all, at an earlier time. Nevertheless, the court reasoned that bifurcation was necessary to prevent Ayerst from being prejudiced. Once the court ruled that the trial was to proceed solely on the issue of liability, it concluded that Hugh's presence would not be relevant in determining whether in utero exposure to Fluothane resulted in damage to his nervous system. Thus, the court ruled that Hugh could not be brought into the courtroom during the liability phase of the proceedings.
 
 
 11
 Although we recognize that the decision to bifurcate the proceedings and the decision to exclude Hugh from the liability phase are closely related, we believe that each issue warrants separate discussion. Accordingly, we review initially the district court's decision to bifurcate the proceedings.
 
 
 12
 A trial court may exercise its discretion to order separate trials on the issues of liability and damages in order to reduce the possibility that the jury will be prejudiced. See, e.g., In re Beverly Hills Fire Litigation, 695 F.2d 207, 216 (6th Cir.1982); Dewald v. Minster Press Co., 494 F.2d 795, 798 (6th Cir.1974); Crummett v. Corbin, 475 F.2d 816, 817 (6th Cir.1973). Bifurcation of proceedings into separate trials concerning liability and damages is appropriate when "the evidence pertinent to the two issues is wholly unrelated" and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination. 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2390 (1971). In our view, since the issues of liability and damages in this case were not so inseparable as to require one unified trial to resolve them both, see Gasoline Products Co., Inc. v. Champlin Refining Co., 283 U.S. 494, 499-500, 51 S.Ct. 513, 514-515, 75 L.Ed. 1188 (1931), the district court would not have abused its discretion by bifurcating these proceedings at the outset. However, the Helminskis argue that the district court abused its discretion in separating the issues of liability and damages "at the virtual close of plaintiff's proofs." We disagree.
 
 
 13
 The late bifurcation of a trial does not constitute reversible error in the absence of a showing of prejudice. See In re Beverly Hills Fire Litigation, 695 F.2d 207, 216 n. 13 (6th Cir.1982). In this case, the Helminskis have failed to establish that any prejudice occurred due to the lateness of the bifurcation order; in fact, the timing of the order may have been beneficial to their case since much of the testimony presented prior to the bifurcation order was not relevant to liability. For example, one of the Helminskis' expert witnesses testified solely concerning Hugh's condition, focusing on his severe mental retardation. This testimony could only have aided the Helminskis' case by demonstrating the severity of Hugh's condition when such evidence was not relevant to the issue of whether Fluothane caused the injury. Moreover, Hugh's mother and brother both testified concerning his condition. The brother testified that Hugh, who was almost seventeen years old at the time of trial, requires constant care and generally spends his time alone, watching television, rocking in a corner, or playing. Mrs. Helminski described Hugh as being approximately six feet tall and weighing ninety pounds. She testified that Hugh is unable to speak but makes sounds which can be frightening to others. According to Mrs. Helminski, because of these sounds, Hugh's inability to control bodily functions, and the necessity of constant supervision, the Helminskis have been unable to go anywhere as an entire family. In our view, such grim testimony did not prejudice the Helminskis' case. Accordingly, since the Helminskis have failed to demonstrate any prejudice resulting from the lateness of the bifurcation order, we conclude that the district court did not abuse its discretion in the matter.[3]
 
 III.
 
 14
 The remaining issue concerns the district court's exclusion of Hugh from the courtroom during the liability phase of the proceedings. The Helminskis assert that such exclusion deprived Hugh of his Seventh Amendment right to a jury trial and his Fifth Amendment right to due process of law.
 
 
 15
 Initially, we note that the minor is the real party in interest in a suit brought by a next friend. See Fed.R.Civ.P. 17(c); Crowder v. Gordons Transports, Inc., 387 F.2d 413, 419 (8th Cir.1967); Kuhlmeier v. Hazelwood School District, 596 F.Supp. 1422, 1425 (E.D.Mo.1984); 3A J. Moore & J. Lucas, Moore's Federal Practice p 17.26 (1985). In this case, the Helminskis brought suit only as the next friends of their minor son and not on their own behalf. As recognized by the district court, there is no doubt that Hugh is the real party in interest. Therefore, we must determine the extent of a civil litigant's right to be present at the trial of his case when the opposing party alleges that his mere appearance before the jury would be prejudicial. In this regard, we must first determine whether a plaintiff has an absolute right to be present in the courtroom.
 
 
 16
 Neither the Fifth Amendment's due process clause nor the Seventh Amendment's guarantee of a jury trial grants to a civil litigant the absolute right to be present personally during the trial of his case.[4] See Faucher v. Lopez, 411 F.2d 992, 996 (9th Cir.1969). We believe that the extent of a civil litigant's right to be present at trial is appropriately analyzed under the due process clause of the Fifth Amendment. Consistent with due process the right to be present may be sufficiently protected in the party's absence so long as the litigant is represented by counsel. Cf. Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919) ("We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict."); Arrington v. Robertson, 114 F.2d 821, 823 (3d Cir.1940) (due process clause of the Fifth Amendment requires that plaintiff be given right to be present in person or by counsel). Nonetheless, since an attorney is merely the representative or agent of the litigant and not the litigant's "alter ego," Carlisle v. County of Nassau, 64 App.Div.2d 15, 19, 408 N.Y.S.2d 114, 117 (1978), a court may not exclude arbitrarily a party who desires to be present merely because he is represented by counsel; such exclusion would violate the due process clause of the Fifth Amendment. Cf. Fillippon, 250 U.S. at 81, 39 S.Ct. at 436; see Snyder v. Lehigh Valley Railroad Co., 245 F.2d 112, 114-15 (3d Cir.1957) (en banc); Arrington, 114 F.2d at 823. Accordingly, we now consider what circumstances might, consistent with due process, justify involuntary exclusion of a party.
 
 
 17
 Three types of cases are relevant to the issue at hand. First, we will examine those cases which consider a presumably healthy party's right to be present in court during trial. Second, those opinions which involve possible exclusion of a party due to physical injuries will be reviewed; in these cases, the parties were able, we assume, to comprehend the proceedings and aid counsel. Finally, we will survey the small number of cases involving a fact pattern similar to the one facing this court, that is, the excluded party was unable to comprehend the proceedings or aid counsel.
 
 
 18
 The first group of cases enunciates the general rule that a party is entitled to be present either in person or by counsel at all phases of the trial. See Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919); McKnelly v. Sperry Corp., 642 F.2d 1101, 1108 (8th Cir.1981); Arrington v. Robertson, 114 F.2d 821, 823 (3d Cir.1940); Florence v. Moors Concrete Products, Inc., 35 Mich.App. 613, 620-21, 193 N.W.2d 72, 75 (1972). As noted earlier, however, representation by counsel does not justify arbitrary exclusion of a litigant who wishes to be personally present in the courtroom.
 
 
 19
 In the second set of cases, one party claims that the mere physical presence of the other party before the jury is prejudicial. For example, in Carlisle v. County of Nassau, 64 App.Div.2d 15, 408 N.Y.S.2d 114 (1978), the defendant county asserted that the plaintiff who sued when he was rendered a permanent paraplegic from a gunshot wound inflicted by a police officer, should have been excluded from the courtroom during jury selection since his presence was inflammatory. The court rejected this contention, concluding that physical appearance did not justify exclusion of a litigant despite his desire to be present.
 
 
 20
 [T]he fundamental constitutional right of a person to have a jury trial in certain civil cases includes therein the ancillary right to be present at all stages of such a trial, except deliberations of the jury. [citations omitted]. Such right is basic to due process of law. [citation omitted].
 
 
 21
 Id. at 18, 408 N.Y.S.2d at 116. The court in Carlisle noted that a party's presence is important not only so that he may observe the proceedings but also so that he can aid his attorney in devising trial strategy. Id. at 19, 408 N.Y.S.2d at 117.
 
 
 22
 While the court in Carlisle was faced with a party whose only disability was physical, a Florida court was confronted with the issue of whether to exclude a party whose appearance and conduct was alleged to have resulted in prejudice. Purvis v. Inter-County Telephone & Telegraph Co., 203 So.2d 508 (Fla.Dist.Ct.App.1967) (per curiam), cert. denied, 210 So.2d 223 (Fla.1968). The trial court excluded the plaintiff from the courtroom because he was found to be "argumentative, somewhat irrational and of such mental attitude and physical appearance that the jury might be influenced." Id. at 510. The Florida court of appeals reversed and remanded for a new trial on the issue of liability at which the plaintiff could be present, concluding that the trial court made only "vague" findings as to the plaintiff's mental condition; the appellate court could not "see how his attitude would influence the jury." Id. at 511. The issue thus became whether the plaintiff could be excluded solely on the basis of physical appearance and, therefore, was governed by the Florida Supreme Court's decision in Florida Greyhound Lines, Inc. v. Jones, 60 So.2d 396 (Fla.1952).
 
 
 23
 One who institutes an action is entitled to be present when it is tried. That, we think, is a right that should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused. The appellee [who was brought to court on a stretcher] was properly present.
 
 
 24
 Id. at 397. Thus, the Purvis court concluded that "in absence of a showing that [the plaintiff] was incompetent or so incapacitated that he could not comprehend the trial proceedings, he had a right to be present in the courtroom."[5] Purvis, 203 So.2d at 511.
 
 
 25
 We agree with the proposition, gleaned from Carlisle, Purvis, and Greyhound Lines, that a plaintiff's physical condition alone does not warrant his exclusion from the courtroom during any portion of the proceedings.[6] See also Sherwood v. City of Sioux Falls, 10 S.D. 405, 409, 73 N.W. 913, 914 (1898) (permitting plaintiff in personal injury action to be brought into court on a cot in order to testify). We must now consider the third type of case which involves a plaintiff whose mental condition, which is allegedly the result of the defendant's conduct, renders him unable to comprehend the proceedings or aid counsel in furthering his case.[7] Two courts have permitted exclusion of such a plaintiff during the determination of liability.
 
 
 26
 In Dickson v. Bober, 269 Minn. 334, 130 N.W.2d 526 (1964), the plaintiff was injured in a collision with the defendant's vehicle. The accident had changed the plaintiff from "a vital, intelligent, healthy youth to one unable to express or sustain himself, helpless and entirely dependent on others, and wholly unable to comprehend trial proceedings." Id. at 336, 130 N.W.2d at 529. After observing the plaintiff, the trial court stated:
 
 
 27
 His eyes seemed to function on detection of an unusual movement. Hideous and agonizing groans and sounds emanated from plaintiff. In this trial test, arranged so that the court would have some conception of what was involved, the above is a fair description of the depressing spectacle that in all likelihood could have been enacted if plaintiff's request [to present the injured young man to the jury] had been granted.
 
 
 28
 Id. The court determined that since the plaintiff was unable to testify or comprehend the proceedings, he possessed no absolute right to be personally present as long as his rights were protected by his attorney and the guardian who brought the action on his behalf. Id. at 337, 130 N.W.2d at 530. In essence, the court concluded that the preservation of a fair trial atmosphere when liability was being considered required that the plaintiff be excluded.
 
 
 29
 The Supreme Court of Arizona has followed the reasoning of Dickson. In Morley v. Superior Court of Arizona, 131 Ariz. 85, 638 P.2d 1331 (1981), the court upheld the exclusion of a plaintiff who was comatose, required a tracheostomy to breath, and was fed through a tube inserted in his stomach.
 
 
 30
 A plaintiff unable to at least communicate with counsel will have no right denied by exclusion from the courtroom during the liability phase of the trial. If in addition the plaintiff's physical condition, allegedly caused by the defendant, is so pitiable that the trial court determines the plaintiff's mere presence would prejudice the jury, then failure to exclude the plaintiff during the liability phase would deny the defendant's right to an unbiased jury when the source of the bias is totally irrelevant to the liability issue.
 
 
 31
 Id. at 88, 638 P.2d at 1334.
 
 
 32
 Other courts have refused to exclude a plaintiff who alleges that the defendants caused the physical and mental injury. For example, a brain damaged plaintiff who alleged that her physicians' negligence resulted in her condition was permitted to be present in court for a few minutes to demonstrate her condition. Talcott v. Holl, 224 So.2d 420 (Fla.Dist.Ct.App.), cert. denied, 232 So.2d 181 (Fla.1969). Specifically, the court permitted an expert witness to demonstrate the plaintiff's condition by asking "certain questions to show her inability to speak or converse normally, and to request her to attempt certain motions to demonstrate her inability or limitations in such respects." Id. at 421-22. Similarly, without comment or citation of authority, the Supreme Court of California determined that a trial court did not abuse its discretion in limiting to ten minutes the appearance of a minor plaintiff who had suffered a disabling stroke, following removal of a brain tumor, which resulted in paralysis. Whitfield v. Roth, 10 Cal.3d 874, 896, 519 P.2d 588, 604, 112 Cal.Rptr. 540, 556 (1974).
 
 
 33
 A recent case involving the issue of a litigant's right to be present in court concerned a claim by the plaintiff that he was severely injured in an auto accident as the result of the defendant's negligence. Marks v. Mobil Oil Corp., 562 F.Supp. 759 (E.D.Pa.1983), aff'd, 727 F.2d 1100 (3d Cir.1984). At the outset, the district court bifurcated the proceedings, trying the issue of liability first. Following a jury verdict in the plaintiff's favor, the defendant sought a judgment notwithstanding the verdict or a new trial, claiming that "the sight of the severely injured [plaintiff] posed an unrealistically high risk of invoking jury bias in his favor." Id. at 768. The court rejected this contention.
 
 
 34
 A party to a lawsuit has a right to attend the trial absent an overwhelming reason to the contrary. In a civil case, this Court can at this time envision no reason to exclude a party because of his injuries, particularly where, as in this case, the party's behavior at trial was not disruptive.
 
 
 35
 The Court always retains discretion concerning the administration of courtroom proceedings. In this case, the Court exercised its discretion to permit [the plaintiff] to sit in the Courtroom for a few hours during the seven-day liability phase of the trial and throughout the damages phase. Furthermore, this Court finds that the presence of [the plaintiff] was not prejudicial ... since ... the testimony of plaintiff's damages witnesses concerning the extent of [the plaintiff's] injuries painted a grimmer picture of the injuries than the actual sight of [the plaintiff].
 
 
 36
 Id.
 
 
 37
 Although the opinions reviewed do not couch their analyses strictly in federal constitutional terms, we hold that any exclusion of a litigant must comport with due process. Consistent with due process, a plaintiff who can comprehend the proceedings and aid counsel may not be excluded from any portion of the proceedings absent disruptive behavior or a knowing and voluntary waiver. Thus, a plaintiff with a solely physical abnormality may not be excluded involuntarily, absent disruptive behavior, even when the abnormality is due allegedly to the defendant's wrongful conduct. However, the circumstances in this case go beyond a solely physical injury; Hugh is unable to comprehend trial proceedings or aid counsel in obtaining a favorable judgment. We must consider whether, consistent with due process, the presence of these additional factors permits exclusion. In this regard, the focus of the inquiry should not be on the plaintiff's physical and mental condition; rather, the critical inquiry concerns the effect of such condition on the jury.
 
 
 38
 The benchmark of our judiciary rests on the ability of the courts to provide all parties with a fair trial. An essential component of a fair trial is "a jury capable and willing to decide the case solely on the evidence before it." McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, ----, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982)). Thus, we must safeguard the jury's ability to decide the case based upon the evidence presented rather than on emotional factors. Although under some circumstances the mere sight by a jury of a severely injured plaintiff may evoke sympathy, juror sympathy alone is insufficient to establish juror prejudice. Generally, the jury will follow the court's instructions and fulfill its promise to decide the case solely on the facts. On the other hand, there may be occasions when the mere presence of a party would render the jury unable to arrive at an unbiased judgment concerning liability. Should such a case arise and the presence of the party would not aid the fair administration of justice, the trial court can exclude the plaintiff or limit his presence. A party's involuntary exclusion under these circumstances would not constitute a denial of due process. Nevertheless, absent disruptive behavior, involuntary exclusion of a party who is able to comprehend the proceedings and aid counsel would constitute a denial of due process since exclusion of such a party would deny him the right to obtain a fair trial.
 
 
 39
 Having decided that under limited circumstances a party's involuntary exclusion might be justified, we now go on to consider the procedure for making such a determination. In most cases, the decision to permit the injured party's presence or exclude such party can be made prior to trial. Counsel for both parties, who ought to be aware of the potential conflict, must bring the issue to the court's attention. In our view, a hearing on potential jury prejudice, in which the court observes the injured party, will best protect a litigant's right to be present as well as the opponent's right to a fair trial. Since we believe that the jury will faithfully perform its task, we conclude that a defendant who asserts that a plaintiff's mere presence will prejudice the jury must bear the burden of persuasion on this issue. To allow involuntary exclusion on any other basis would permit the presumption that an injured person's presence alone will always deter the jury from its factfinding mission. Such a presumption would only institutionalize a reaction based solely upon appearance. This we decline to do.
 
 
 40
 The issue which the district court must resolve at the hearing is whether the party's presence would "prevent or substantially impair" the jury from performing its duties "in accordance with [its] instructions and [its] oath." Adams v. Texas, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980), quoted in Wainwright v. Witt, --- U.S. ---, ---, 105 S.Ct. 844, 850, 83 L.Ed.2d 841 (1985). If the court in its discretion determines that the party's presence would, indeed, be prejudicial, the court may bifurcate the proceedings into separate trials on liability and damages, excluding the litigant from the liability phase. Exclusion of a party from the damages portion of the proceedings is, however, inappropriate. See Morley v. Superior Court of Arizona, 131 Ariz. 85, 88, 638 P.2d 1331, 1334 (1981) ("A jury should not decide liability based on the severity of the plaintiff's injury, but certainly the jury should award damages based on the severity of the plaintiff's injuries." (emphasis in the original)); Dickson v. Bober, 269 Minn. 334, 338 n. 3, 130 N.W.2d 526, 530 n. 3 (1964).
 
 
 41
 In short, the defendant who seeks to exclude a handicapped plaintiff must establish at a hearing that the plaintiff's presence would prevent or substantially impair the jury's performance of its factfinding task. The requisite showing of prejudice cannot be satisfied simply by establishing that a plaintiff has a physical or mental injury; the party seeking exclusion must establish that the party's appearance or conduct is likely to prevent the jury from performing its duty. We reiterate that a party's ability to comprehend the proceedings or assist counsel is not the relevant inquiry at this juncture--the issue is whether the party's presence will unfairly prejudice the proceedings in his favor.
 
 
 42
 Should the district court determine that the party's mere presence would be prejudicial, the court must next consider whether the party can understand the proceedings and aid counsel. If the trial court concludes that the party can comprehend the proceedings and assist counsel in any meaningful way, the party cannot be involuntarily excluded regardless of prejudicial impact; in such a case, cautionary instructions will protect the interests of the defendant in a fair trial. Exclusion of a party who is able to comprehend the proceedings and aid his attorney would infringe upon the "fundamental standards of fairness which every litigant before a federal court has a right to expect," Drayton v. Jiffee Chemical Corp., 591 F.2d 352, 361 (6th Cir.1978), and hence, would constitute a deprivation of due process which could be remedied only by granting a new trial.
 
 
 43
 Applying the foregoing to the instant case, we conclude that Hugh was excluded improperly from the courtroom. The decision to exclude Hugh was based upon his described condition alone; the district court never observed Hugh to determine whether his appearance or behavior would result in prejudice. In this regard, even defense counsel acknowledged that Hugh's physical appearance was normal. Although testimony indicated that Hugh was not toilet trained, could not speak, comprehend the proceedings, or assist counsel, and sometimes emitted frightening sounds, this description is insufficient to establish that the jury would be prevented from or substantially impaired in performing its duty. The analysis absent in this case would focus on the likelihood of Hugh displaying abnormal behavior and the likelihood of this conduct affecting the jury's ability to decide the case on the facts. Since this procedure was not followed, we conclude that Hugh was excluded improperly from the courtroom.[8]
 
 
 44
 Having determined that Hugh's exclusion was inappropriate inasmuch as it was not based upon the court's observations but merely upon Ayerst's assertion of prejudice and has not been shown to be necessary to protect Ayerst's interest in a fair trial, we must now determine what remedy, if any, is warranted. If there is any indication that the plaintiff's presence could have assisted in the presentation of his case, we believe that his exclusion would require reversal. Under the facts of this case, however, where the Helminskis acted as Hugh's next friends and legal representatives, where all parties agree that Hugh was completely unable to comprehend the proceedings, and where Hugh because of his extremely low IQ could not aid his attorney in any meaningful way, we conclude that Hugh's exclusion does not constitute reversible error. Moreover, Hugh's exclusion in this case is not reversible especially because the jury heard full evidence of his condition and, therefore, any potential danger that the jury would be unable to visualize the very human dispute in this lawsuit was removed.
 
 IV.
 
 45
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 46
 Each party is to bear its own costs on appeal.
 
 
 
 [1]
 Fluothane is the trade or brand name of halothane, a general anesthetic, which is a central nervous system depressant. Ayerst received permission from the Food and Drug Administration to market Fluothane as a surgical anesthetic in 1958
 
 
 [2]
 Ayerst's contention that Hugh would have been a surprise witness is without merit. Despite any agreements the parties may have had, the pre-trial order listed Hugh as a witness well in advance of trial. Moreover, the issue is irrelevant since the Helminskis asserted before the district court, as on appeal, that Hugh had the right to be present as a party and not as a witness
 
 
 [3]
 Sound judicial practice requires that, so far as practicable, the trial court's decision to bifurcate proceedings occur prior to trial. However, without some showing of prejudice we do not believe that reversal is warranted solely because of the lateness of the bifurcation order
 
 
 [4]
 Even apart from obstreperous conduct, see Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970), a criminal defendant does not have an absolute right to be present at all stages of his trial, see Faretta v. California, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975); United States v. Brown, 571 F.2d 980, 986-87 (6th Cir.1978). The criminal defendant possesses a Fifth Amendment right to be present in court "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge," i.e., only to the extent that his absence would deprive him of a fair trial. Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (viewing by jury of crime scene in defendant's absence not denial of due process)
 
 
 [5]
 We note that in Purvis the plaintiff had no guardian to represent him, nor was there a showing that the plaintiff was unable to comprehend the proceedings. A Florida appellate court later reaffirmed the notion that a litigant who can comprehend the legal proceedings may not be excluded from the courtroom. See Freeman v. Rubin, 318 So.2d 540, 544 (Fla.Dist.Ct.App.1975)
 Other courts, without significant reasoning or citation of authority, have permitted injured child plaintiffs to be present in the courtroom despite the fact that their young ages made it unlikely that they could comprehend the proceedings. Chicago Great Western Ry. Co. v. Beecher, 150 F.2d 394 (8th Cir.1945) (child under three years old struck by defendant's train, remained properly in courtroom over defendant's objection), cert. denied, 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473 (1946); Anderson v. Sears, Roebuck & Co., 377 F.Supp. 136 (E.D.La.1974) (child disfigured in fire caused by defendant's defective heater permitted to remain in courtroom over objection of defendant).
 
 
 [6]
 Family members generally have a similar right to be present in court. For example, there is no reason to exclude a decedent's small son unless he distracts the jury or destroys courtroom decorum, see Cavendish v. Sunoco Service of Greenfield, Inc., 451 F.2d 1360, 1368 (7th Cir.1971), or to prohibit a decedent's widow from attending trial, cf. Mueller v. Cities Service Oil Co., 339 F.2d 303, 307 (7th Cir.1964), or, finally, to exclude the widow and two minor children of the deceased from the courtroom, see Odum v. Corn Products Refining Co., 173 Ill.App. 348, 352 (1912) ("It may be true that the presence of the widow and these children would tend to enlist the sympathy of the jury in their behalf, but the widow and children are interested parties in the result of this suit; whatever judgment is obtained belongs to them and we know of no law that prevents interested persons from being present at the hearing of their case, even though their unfortunate condition was such as to enlist the sympathy of the jury ....")
 
 
 [7]
 Of course, if the injury is not due to the defendant's alleged conduct, there is no basis for exclusion
 
 
 [8]
 While we are mindful that in some instances counsel may seek to parade a handicapped plaintiff before the jury in a deliberate attempt to elicit sympathy, we do not believe that this is a common occurrence. However, should such improper conduct occur, a trial court has the discretion to preserve courtroom decorum