Norman P. MAENNER, Ruth E. Maenner, Phillip A. Howard, Sharon R. Howard, Vernon N. Slabaugh, and Bette L. Slabaugh, Plaintiffs,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, et al., Defendants.

No. G85–1209 CA1.

United States District Court, W.D. Michigan, S.D.

Aug. 11, 1989.

Boyd A. Henderson, Grand Rapids, Mich., for plaintiffs.

Stanley A. Prokop, for defendant St. Paul Fire and Marine Ins. Co.

Gregory I. Thomas, Detroit, Mich., for defendant Timmer Agency.

Gary A. Rowe, Grand Rapids, Mich., for defendant American Universal.

Meigs M. Day, Grand Rapids, Mich., for Safeco Ins.

## OPINION AND ORDER ON MOTION FOR BIFURCATED TRIALS

JOSEPH G. SCOVILLE, United States Magistrate.

### Procedural History

This is a certified class action. The plaintiff class, as presently certified,[1] contains 253 members. The named plaintiffs and the members of their class were all herd owners under a cattle-leasing plan offered and operated by the now-defunct North American Cattle Corporation (NACC). Plaintiffs allege that their cattle were stolen by employees of NACC. Their first amended complaint, brought against casualty insurers who covered the cattle against certain named perils, alleges that the defendant insurance companies are liable to indemnify plaintiffs for the loss of their cattle. Plaintiffs set forth diversity claims for reformation, breach of contract, violation of statutory duties, negligence, and estoppel.

Pursuant to the provisions of Fed.R. Civ.P. 23(d) and 26(f), the court directed the parties to submit proposed plans addressing discovery and other procedural aspects of the case. Plaintiffs' discovery plan, filed on September 30, 1988, requested that issues of liability be tried separately from those relating to damages. At a scheduling conference conducted on October 28, 1988, I granted defendants an opportunity to respond in writing to the request for bifurcated proceedings. Defendants thereafter filed briefs in opposition to plaintiffs' request. At a hearing on February 15, 1989, I indicated a general inclination to bifurcate the issues of liability and damages, but requested further briefs from counsel on the question of how particular issues should be treated in each phase of the trial. In response, all parties filed a second round of briefs. The court heard oral argument on June 29, 1989.

In essence, plaintiffs argue that all issues of fact and law relevant to liability are common to all class members and should be tried separately from issues involving the damages sustained by individual class members. Plaintiffs assert that once liability is established, the calculation of damages for each individual class member will involve an accounting procedure to determine the number of cows lost, the date of the loss and the amount recoverable. Plaintiffs suggest reference of these damage issues to a special master in proceedings separate from the liability phase, followed, if necessary, by a trial on damages.

Defendants oppose any separate trial on issues of liability and damages. They contend that the relevant considerations under Rule 42(b)—convenience, judicial economy, and possibility of prejudice—weigh against

---

1. Motions are now pending to both add and delete class members on account of allegedly new information concerning the dollar amount of their claims.

bifurcation. They also raise a constitutional issue under the Seventh Amendment. In this vein, defendants argue that splitting up the closely related liability and damage questions into two separate trials will deprive defendants of their constitutional right to trial by jury.

After consideration of the arguments of the parties, I conclude that separate trials, with appropriate safeguards, would promote the ends of Rule 42(b), and will not prejudice any party's right to a fair trial by jury.

### Discussion

■ The purpose of a class action is to conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). This is a so-called "spurious" class action, certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. In all spurious class actions, it is assumed that the claims of the plaintiff class will present some common issues, while other issues (especially those relating to damages) will not be common to all class members. *See* Advisory Committee Notes, Amendments to Rule 23, 39 F.R.D. 69, 103 (1966). Class certification under that subsection of Rule 23 requires an express finding that the common questions predominate over the individual issues. Fed.R.Civ.P. 23(b)(3). The report and recommendation adopted by Judge Miles expressly noted that individual questions might arise on issues such as the extent of insurance coverage (Report and Recommendation at 16 n. 2) and the amount of damages. (*Id.* at 9). Judge Miles nevertheless found that, despite the inevitable existence of some individual issues, the common issues in this case predominate. (Order of June 8, 1988, adopting findings of Report and Recommendation at 6–9). The issue presented by the present dispute, therefore, is not whether common questions exist. That question has been resolved. The issue is whether the common questions should be tried at the same time as the individual issues.

Both the courts and the commentators have recognized the utility of bifurcated trials in Rule 23(b)(3) class actions. A leading commentator has summarized the rationale for bifurcation as follows:

A bifurcated procedure allows the class representative to try common issues to final judgment. If the defendant prevails, the adverse judgment is binding on all class members, and anticipated management problems are avoided altogether. If the class representative prevails on the common issues, however, individual issues may be resolved in a second trial.

2 Newberg on Class Actions § 9.53 at 320 (2d Ed.1985). The federal courts have used bifurcated trials in class actions when doing so would further convenience, manageability, and the ends of justice. *See, e.g., Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 470–471 (5th Cir.1986); *Greenhaw v. Lubbock Co. Bev. Ass'n,* 721 F.2d 1019, 1024–25 (5th Cir.1983). In fact, one court has described this method of proceeding as the one "generally" adopted in Rule 23(b)(3) class actions. *Halverson v. Convenient Food Mart, Inc.,* 69 F.R.D. 331, 334 (N.D.Ill.1974).

The authority underlying the court's power to order bifurcated trials is Rule 42(b). Under this rule, the court has discretion to order separate trials on the issues of liability and damages. *Helminski v. Ayerst Laboratories,* 766 F.2d 208, 212 (6th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985). Judge Enslen has summarized the relevant considerations under Rule 42(b) as follows:

Under this Rule the Court is given a method to separate issues. It may do so if: (1) it would avoid prejudice; (2) it would provide for convenience, or; (3) it would expedite the proceedings and be economical. Of course, under general circumstances, a single trial is more likely to satisfy these conditions than a bifurcated trial. *Moss v. Associated Transport, Inc.,* 344 F.2d 23 (CA 6 1965). However, in complex cases with complex

issues, justice is often best served if issues are separated. *Warner v. Rossignol*, 1 Cir., 513 F.2d 678 (1975).

*Organic Chemicals, Inc. v. Carroll Prod., Inc.*, 86 F.R.D. 468, 469 (W.D.Mich.1980).

■ The two most relevant[2] factors—convenience and economy—weigh strongly in favor of bifurcation of this case. As Judge Miles has already found, many of the liability issues involved in this case are common to all class members and would be most expeditiously handled in a single trial. Among other issues, the following key liability questions appear common: the alleged agency relationship between the Timmer Insurance Agency and the defendant insurance companies; the extent of Timmer's knowledge concerning the alleged fraudulent acts of NACC personnel; the circumstances surrounding the issuance of all insurance certificates in the name of NACC instead of the plaintiff class members; and the existence of a common scheme or course of conduct by NACC employees in wrongfully disposing of the cattle. These issues appear to require extensive proofs, but their resolution—one way or the other—will greatly simplify the remainder of the case. If plaintiffs fail to prevail on essential liability issues, then the parties and the court are spared a complicated damage proceeding. If plaintiffs prevail, the case may settle. If not, the damage issues appear to provide grist for a separate, complex trial, in and of themselves.

Defendants' proposal is that all issues of liability and damages be tried together. Given the assumption by all parties that the damages phase of the trial will necessarily involve individual issues, defendants' proposal would involve a trial on the common issues, consolidated with determination of the individual issues arising in 250+ claims. This is a nightmarish prospect. Defendants' proposal would effectively defeat the class-action treatment of this case. The case would proceed, not as a class action, but as a trial of 250+ separate

claims joined for trial. This is not the purpose of a class action, in which the representative parties litigate common issues on behalf of absent class members.

Considerations of efficiency and economy therefore dictate a separate trial of the common issues, uncomplicated by the detail involved in resolving individual issues. Seventh Amendment considerations, however, counsel caution. A party's Seventh Amendment guarantee of a trial by jury includes the right to have a single issue decided one time by a single jury. *See Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). As applied to the bifurcation issue, this principle allows the issue of damages to be decided in a second trial by a different jury only if the issues of liability and damages are "so distinct and separable" that they may be tried separately "without injustice." *Id.; see Helminski*, 766 F.2d at 212.

This principle does not prevent bifurcation, but it does have practical consequences. If different juries are used for the liability and damages trials, the issues involved in each phase must be "distinct and separate." If a single jury is used for both phases, then no problems arise from the relatedness of the issues. *See In re Plywood Antitrust Litigation*, 655 F.2d 627, 635–36 (5th Cir.1981); 7B Wright & Miller § 1801 at 458–462 (1986); 2 Newberg on Class Actions § 9.53 at 324.

■ At this stage of the case, it is difficult to determine whether the issues of liability and damages are so intertwined as to require submission of the case to a single jury. Defendants claim that the issues are hopelessly intertwined; plaintiffs argue to the contrary. In part to resolve this question, the court adopts the procedure approved by the Fifth Circuit in *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468 (5th Cir.1986). In that case, the district court ordered a jury trial on the common

---

**2.** Where courts have addressed the possibility of prejudice, they are usually concerned with the need to shield the jury from prejudicial damage evidence during the liability phase of the case.

*Organic Chemicals*, 86 F.R.D. at 469–470; *see Helminski*, 766 F.2d at 212. This consideration is not a factor in this case.

**492**

liability issues, in which the class jury would also decide all questions arising in the individual actions of the named class representatives. 782 F.2d at 471.

The procedure appears to offer several benefits for the present case. First, defendants would have an opportunity, in litigating the first phase of this case, to demonstrate to the court the interrelatedness of the liability and damage issues, while plaintiffs would have the same opportunity to demonstrate the opposite. The court would then be able to decide, on the basis of the proofs, whether it is necessary to recall the same jury for further proceedings in the other claims. Second, there are only six named plaintiffs, composed of three husband-wife pairs. The complexity added to the class suit by adjudicating their individual claims to judgment would therefore be minimal. The parties may now prepare for a trial of limited scope, without the necessity of extensive discovery on the individual claims of absent class members. Finally, the trial of the named plaintiffs' claims could act as a "bellwether," providing a basis for settling the remaining claims. *See* Manual For Complex Litigation (Second) § 33.26 (1985).

Accordingly, the court will conduct a jury trial on all common liability issues, with the jury returning its verdict by special interrogatory on all common liability issues. Fed.R.Civ.P. 49. At the same trial, all issues relating to the claims of the six named plaintiffs will also be tried to final verdict. After the completion of the common jury trial, the court will provide for the trial of the separate liability and damage issues of the absent class members, if necessary.

IT IS SO ORDERED.