**Andrew B. SHAPIRO, Plaintiff,**

v.

**Michael S. HAENN, et al., Defendants.**

**No. 01–CV–101–B–S.**

United States District Court,
D. Maine.

March 8, 2002.

David M. Glasser, Camden, ME, for Andrew B Shapiro, plaintiff.

Michael S. Haenn, Bangor, ME, Daniel L. Cummings, Norman, Hanson & Detroy, Portland, ME, for Michael S Haenn, Camden National Corporation, Camden National Bank, defendants.

## ORDER

SINGAL, District Judge.

Plaintiff claims that a bank and its attorney harassed him with a foreclosure action after he had already satisfied the underlying debt, in violation of state and federal consumer protection laws. Presently before the Court is Defendants Camden National Corporation and Camden National Bank's Motion for Judgment on the Pleadings pursuant to Rule 12(c) (Docket # 15). For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

## I. LEGAL STANDARD

 "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In deciding whether to grant judgment for the moving party, the Court must "accept all of the nonmoving party's well-pleaded factual averments as true and draw all rea-

sonable inferences in [his] favor." *Feliciano v. Rhode Island*, 160 F.3d 780, 788 (1st Cir.1998). Judgment on the pleadings is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988).

In addition to the pleadings themselves, the Court may consider certain attachments to the pleadings without converting the motion into one for summary judgment. *Rubert–Torres ex rel. Cintron–Rubert v. Hospital San Pablo, Inc.*, 205 F.3d 472, 476 (1st Cir.2000). Specifically, it may consider "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993).[1] Plaintiff attached three documents from related proceedings in state court to his Complaint. The Court will consider these documents for the purposes of this Motion because they are public records that are central to Plaintiff's claim, and neither party disputes their authenticity.[2]

## II. BACKGROUND

On June 3, 1993, Plaintiff Andrew Shapiro borrowed $40,000 from Defendant Camden National Corporation and/or its subsidiary, Defendant Camden National Bank (together, "the Bank"). He secured the loan with a mortgage on a residence in Camden, Maine, where he lived with his

---

1. In deciding whether an attachment converts a Rule 12(c) motion into a motion for summary judgment, the Court may borrow from cases interpreting Rule 12(b)(6). *Rubert–Torres*, 205 F.3d at 475.

2. Specifically, the Court will consider the complaint (Exhibit D to the Complaint in this action), motion to dismiss (Exhibit I), and docket sheet (Exhibit J) from the state court proceedings.

then-wife, Carol Shapiro (now Carol Smith).

Shapiro and Smith divorced on November 2, 1994. In the divorce, Smith was awarded Shapiro's entire interest in the mortgaged property. Shapiro remained liable on the underlying debt and was ordered to discharge the promissory note by November 28, 2000.

The loan was payable in annual installments due on or about the loan's anniversary date. The Bank customarily notified Shapiro of the amount due shortly before each payment date. In 1999, however, Shapiro did not receive any notice of the payment that would have been due May 27 and did not make the scheduled payment. The Bank declared the loan in default and accelerated the debt. On June 8, 2000, the Bank, acting through its attorney, Defendant Michael Haenn, filed a foreclosure action in Maine District Court against Smith. The lawsuit also sought to collect from Shapiro any amount that remained outstanding on the loan after Smith's property was sold at foreclosure.

On June 9, 2000, Haenn wrote Shapiro that he could avoid foreclosure by paying the full amount of the debt and associated collection expenses. In response to further inquiry, Haenn told Shapiro's attorney that Shapiro could satisfy his obligation entirely with a payment of $11,597.43 by June 16, 2000. This figure included principal, interest, late charges and enforcement costs, including Haenn's attorney fees. On June 16, 2000, acting through his attorney, Shapiro tendered a check in the requested amount to an officer of the Bank. On June 21, 2000, the Bank moved to dismiss the foreclosure action.

Soon after, a further dispute arose between Shapiro's attorney and Haenn.[3] On June 21, 2000, Shapiro's attorney wrote to Haenn and complained that the Bank had violated a Maine state statute by failing to provide Shapiro with advance notice that the loan was in default. Either in this or a later exchange between the two attorneys, Shapiro took the position that Haenn and the Bank were not entitled to all of the fees and costs that Haenn had requested to settle the debt.

In response, Haenn filed a written notice with the Maine District Court that the Bank was withdrawing its motion to dismiss. By the time this notice was docketed on June 26, however, the court had already granted the motion to dismiss by an order docketed on June 23.[4] Nevertheless, the Bank, through Haenn, continued to prosecute the foreclosure action as though it had not been dismissed. According to Shapiro, the Bank did so in order to prevent him from recovering the disputed fees and costs or pursuing any other claim against the Bank. Shapiro, unaware that the lawsuit had in fact been dismissed, was forced to defend against foreclosure, including responding to discovery requests and submitting to a deposition. It was not until November 27, 2000, that Shapiro and his attorney first learned from the state court that the lawsuit had been dismissed several months earlier.

Ultimately, the Bank retained Shapiro's payment of $11,597.43. However, as of May 2001, the Bank had neither discharged the mortgage nor provided Shapiro with the original promissory note indicating that it was satisfied.

On May 24, 2001, Shapiro filed this action, alleging that Defendant Haenn had

---

**3.** Details of the genesis and scope of this dispute are somewhat sketchy in the Complaint.

**4.** The record does not indicate whether the parties received notice of the dismissal.

violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (Count I), and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. § 11001 et seq. (Count II). He also claims that Defendant Camden National Corporation committed the state torts of wrongful use of civil proceedings (Count III) and abuse of process (Count IV), and violated the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205–A et seq. (Count V). Finally, he seeks declaratory judgment against Defendant Camden National Corporation pursuant to 28 U.S.C. § 2201. The Defendants answered on September 14, 2001. On January 4, 2002, Defendants Camden National Corporation and Camden National Bank moved for judgment on the pleadings, pursuant to Rule 12(c), on two of Plaintiff's state law claims. Fed. R.Civ.P. 12(c).

## III. DISCUSSION

### A. Wrongful Use of Civil Proceedings [5]

 Plaintiff claims that the Bank committed the state tort of wrongful use of civil proceedings by pursuing the foreclosure lawsuit against him after he had already repaid his loan in full. Wrongful use of civil proceedings in Maine comprises three elements:

> (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought.

*Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 708 A.2d 651, 656 (Me.1998). The Bank contends that as a matter of law, the

foreclosure proceedings did not terminate in Plaintiff's favor and that, therefore, Plaintiff cannot establish the third element of his claim.

 Whether the prior proceedings terminated in Plaintiff's favor is a question of law. *Id.* When an earlier case ends in a dismissal instead of a judgment, the Court must determine whether the dismissal was purely procedural or indicates that the lawsuit was groundless on the merits. *See* Restatement (Second) of Torts, § 674 cmt. j (1977). For example, a dismissal on pure statute of limitations grounds is not a favorable termination, *Palmer Dev. Corp. v. Gordon*, 723 A.2d 881 (Me.1999), but a dismissal because the complaint failed to state an essential element of the claim is deemed favorable to the defendant, *Adam v. Potter Prescott Jamieson & Nelson*, No. CIV. A. CV–99–479, 2000 WL 33675177 (Me.Super. May 19, 2000).

From the pleadings and state court documents, the Court is unable to determine exactly when and on what basis the underlying foreclosure action ended. The docket sheet indicates that the state court dismissed the action on June 23, 2000. However it also reflects that the parties continued to file pleadings until November 27, 2000. Furthermore, the information currently before the Court does not indicate what issues the parties continued to litigate between June 23 and November 27. Without this information, the Court cannot say beyond doubt that the ultimate resolution of the litigated issues was not favorable to the Plaintiff. Therefore, judgment for the Bank on this Count would be premature.

---

**5.** The Court has federal question jurisdiction over Plaintiff's claim under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. It has supplemental jurisdiction to resolve Plaintiff's state law claims, which form part of the same case or controversy as the federal claim. 28 U.S.C. § 1367.

## B. Maine Unfair Trade Practices Act

█ The Bank also seeks judgment in its favor on Plaintiff's claim that, by failing to discharge the mortgage and note upon receiving full payment, the Bank violated the Maine Unfair Trade Practices Act, 5 M.R.S.A. 205–A et seq. (UTPA). The Bank claims that it cannot be liable under the UTPA because the statute does not apply to financing transactions such as the one between the Bank and Plaintiff.

The UTPA provides consumers generally with a cause of action against providers of goods and services who engage in "[u]nfair or deceptive acts or practices...." 5 M.R.S.A. § 207, § 213.[6] However, the unfair and deceptive practices of *financial institutions* are governed by separate provisions, found in Chapter 24 of Title 9–B of the Maine Revised Statutes. 9–B M.R.S.A. § 241–43. The Maine legislature has specifically exempted financial institutions that are subject to the provisions of Chapter 24 from the coverage of the UTPA. 9–B M.R.S.A. § 244. Therefore, as "a corporation organized under the laws of the State of Maine engaged in the business of banking," (*see* Compl. at ¶ 5 (Docket # 1); Answer at ¶ 3 (Docket # 2)), the Bank is subject to the provisions of Chapter 24 and exempt from liability under the UTPA. *See Viola v. Fleet Bank of Maine*, No. 95–141–P–DMC, 1996 WL 498390, at *4 (D.Me. Feb.27, 1996); *see also* 5 M.R.S.A. § 208(1).

---

**6.** 5 M.R.S.A. § 213. Private remedies.

(1) Court action. Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 ... may bring an action either in Superior Court or District Court ....

## IV. CONCLUSION

For the above reasons, the Court GRANTS IN PART and DENIES IN PART the Bank's Motion for Judgment on the Pleadings. It ORDERS that judgment be entered in favor of Camden National Corporation on Count Five of the Amended Complaint (Unfair Trade Practices Act)[7] and DENIES the Motion in all other respects.

SO ORDERED.

---

**7.** The Complaint contains two Counts labeled "Count Five." The Court orders that judgment in favor of Camden National Bank be entered only on the first, the full title of which is "COUNT FIVE—CAMDEN NATIONAL CORPORATION UNFAIR TRADE PRACTICES ACT (Maine)." The Court takes no action as to the second Count Five (titled "COUNT FIVE—CAMDEN NATIONAL CORPORATION DECLARATORY JUDGMENT (Federal)"), which was not a subject of the Bank's Motion.