STATE OF MAINE                                        SUPERIOR COURT
                                                         CIVIL ACTION
YORK, ss.                                            DOCKET NO. CV-05-234


RONALD G. RAMSEY, et al.,

        Plaintiff


        v.                              **ORDER**


PEPPERELL BANK & TRUST,                  DONALD C. GARBRECHT
                                         LAW LIBRARY
        Defendant
                                         MAY 15 2007

        This matter comes before the Court on Defendant's motion for summary judgment. Following hearing the Motion is Granted in part and Denied in part, as follows.

## FACTUAL BACKGROUND

        In August 2001, Ronald and Ann Ramsey ("The Ramseys") formed a limited liability company, Quarterdeck Market, LLC, intending to operate a deli and variety store in Saco. They obtained a $200,000 loan from Pepperell Bank & Trust ("the Bank") in November 2002. This loan represented a refinancing of a prior loan in the amount of $162,000, as well as $38,000 for additional capital and improvements. Quarterdeck executed a mortgage to secure their Note on November 26, 2002, personally guaranteed by the Ramseys.

        The Bank sent Quarterdeck a default notice in January 2004, including a notice of their intent to accelerate the balance due. At that point, payments were three months behind. Mrs. Ramsey then met with an officer of the Bank, made a payment, and explained that family problems, including the death of her grandson, had affected the

business. She assured the Bank that they would try to bring the loan current and noted that a brokerage firm was attempting to sell the Quarterdeck. But, between January and May 2004, the loan remained in default. The Ramseys claim that the Bank told them that as long as they continued trying to pay and were not more than 90 days behind, the Bank would not foreclose. The Bank denies this allegation. By May 30, 2004, the Ramseys allege that the mortgage was within 30 days of being current. The Bank, however, decided to foreclose by holding a public sale. On June 2, the Ramseys and Quarterdeck received a default notice, which claimed that they had not paid various taxes on time, nor had they sent the Bank Quarterdeck's tax returns and financial statements. The notice included a right to cure by June 13, 2004 and an interest rate increase. The Bank claimed that the outstanding debt was $194,113.87.

The Ramseys contested the amount in the allotted time, contending that the Bank had waived any default because tax payments were typically made once seasonal earnings were in, and because the Bank usually did not claim a default unless the taxing authority was preparing to foreclose. Also, they argued that the financial information they had to submit was not yet due. By July 14, the Ramseys had received notice of a foreclosure sale and the foreclosure advertisement began to appear in the newspaper. The sale was scheduled for August 12.

A July 24 meeting occurred, attended by the Ramseys, the Bank's president and vice-president, and representatives of the brokerage firm trying to sell the Quarterdeck. That firm allegedly estimated the business's value as a going concern at approximately $490,000, with a sheer liquidation value of $300,000. The Bank alleges that it offered the Ramseys additional financing to cure the default on the condition that the Bank would get a second mortgage on their Biddeford property, a proposal that the Ramseys rejected. Instead, they described their plan to stay current and improve revenue.

2

Nevertheless, the Bank held the foreclosure sale, disposing of the real property for $186,000.[1] Personal items[2] were auctioned off individually after the sale of the real estate. In November 2004, the Bank sent the Ramseys and Quarterdeck a notice of deficiency in the amount of $19,970.48. The Ramseys contest this amount because, in their view, the Bank could have sold the property for a much higher price, the interest amount did not reflect auction proceeds, and the legal fee estimate was erroneous.

In July 2005, the Ramseys and Quarterdeck brought this action against the Bank, seeking an accounting and alleging negligence or malpractice in the sale of both the real and personal property. The complaint also alleges wrongful foreclosure, unfair and deceptive trade practices, and a fraudulent transfer. The Bank raised the affirmative defenses that the Ramseys are comparatively at fault, failed to mitigate damages, remained in default, and failed to state a claim upon which relief could be granted. The Bank counterclaimed for a deficiency judgment.

The Bank now moves for summary judgment on both the complaint and counterclaim, on the grounds that the Ramseys have alleged tort claims that are not recognized in Maine, that the foreclosure was authorized under the terms of the loan agreement, that fair market value is irrelevant at foreclosure, and that there was no breach of duty on the Bank's part. The Ramseys contend that the Bank did not conduct the foreclosure in accordance with Maine law and, in fact, pursued the foreclosure sale as a result of financial and administrative difficulties that it was experiencing in 2004, when the Bank was investigated by the FDIC.

---

[1]     The foreclosure sale buyer, a Mr. Tarbox, paid cash for the property.

[2]     These items included restaurant equipment such as coolers and freezers, much of which was also acquired by Mr. Tarbox.

## DISCUSSION

### 1. Summary Judgment Standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. This Court reviews the facts "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

### 2. Count I - Action for Accounting.

The Ramseys have brought an action for accounting, contending that, in its sale procedures and subsequent deficiency claim, the Bank failed to comply with statutory requirements. This foreclosure did not occur pursuant to a court order, but took place pursuant to a power of sale per 14 M.R.S.A. § 6203-A (2005). The Law Court has held that there is no cause of action for an accounting when a strict foreclosure without possession has occurred under 14 M.R.S.A. § 6203(2). *Atlantic Oceanic Kampgrounds v. Camden Natl. Bank*, 473 A.2d 884, 887 (Me. 1984). The statute formerly giving rise to an action for accounting, 14 M.R.S.A. § 6204-A (1980), was repealed in 1989.

Thus, an action for accounting would not normally be available to a debtor in the Ramseys' situation. But, the Ramseys have raised a genuine issue of material fact regarding problems with loan documentation and other internal issues addressed by

4

the FDIC in its 2004 investigation of the Bank[3], all of which may impact the accuracy of the claimed deficiency amount.[4] Because there is a genuine issue of material fact regarding whether the Ramseys may be entitled to an accounting via the equity powers of this Court, and regarding the actual deficiency amount, the Bank's motion for summary judgment on Count I is Denied.

3. Counts II and III – Negligence and Malpractice in the Auction Sale of Real and Personal Property.

The Ramseys contend that, by not proceeding with the foreclosure according to the provisions of 14 M.R.S. § 6203-A, the Bank was negligent and committed malpractice with respect to the real property (Count II) and personal property (Count III). The Bank contends that these torts have not been recognized in Maine in the foreclosure context, and therefore do not form an adequate basis for recovery.

The Law Court addressed a similar issue when a debtor brought a counterclaim to a foreclosure suit. *First New Hampshire Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me. 1992). A contractor borrowing money to renovate an Inn alleged that a bank's favorable comment about the venture constituted "fraudulent misrepresentation and breach of fiduciary duty" because it had a duty to inform him of the "precarious status" of the project. *Id.* at 250. Rejecting this contention, the Court noted that without more, a "creditor-debtor relationship" does not automatically give rise to a fiduciary duty. *Id.*

---

[3] The Ramseys assert that the Bank was under investigation by the FDIC and felt pressured to improve the credit worthiness of its loan portfolio. However, the FDIC directive was not issued until 2005, well after this foreclosure occurred.

[4] It appears that the Ramseys' only recourse here is to seek an accounting to challenge the deficiency amount. They mention that the property was not sold for "fair market value," but this is irrelevant in a foreclosure context because a forced sale would necessarily bring about a lower amount than a sale in the general market. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537-538 (1994). The U.S. Supreme Court noted that "the only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself." *Id.* at 549.

5

Like the contractor in *Scarborough*, the Ramseys have not established a duty on the part of the Bank, a breach of which could lead to liability in negligence. They attempt to reframe their argument about the foreclosure sale of the real property into a different cause of action, but procedures involved in a foreclosure sale are governed by statutes rather than common law. On the record before the Court, there is insufficient evidence from which to conclude that these purported causes of action could provide a basis for relief under Maine law. Accordingly, the Bank's motion for summary judgment on Count II is Granted.

With regard to the sale of personal property, Article 9 of the Uniform Commercial Code ("UCC") governs sales of goods in the foreclosure context. The UCC requires that secured property sold as part of a foreclosure sale must be disposed of in a "commercially reasonable" manner. 11 M.R.S. § 9-1610(2) (2005). Failure to obtain a higher amount or dispose of collateral in a different way does not mean that a sale was not "commercially reasonable." *Id*. at § 9-1927(1).

Viewing this issue in the light most favorably to the Ramseys, there is no evidence that would indicate that the equipment was not sold in a commercially reasonable manner. The Bank's motion for summary judgment on Count III is Granted.

4.     Counts IV and V – Wrongful Foreclosure.

Also, the Ramseys claim that there was a "wrongful foreclosure" of the real and personal property. In their memorandum of law, they distinguish Counts II and III as alleging negligence, and Counts IV and V as alleging intentional behavior on the part of the Bank. There is apparently no case law addressing "wrongful foreclosure" in Maine.

The thrust of the Ramseys' allegations here is that the Bank did not use a licensed auctioneer and did not conduct a fair and reasonable auction due to faulty advertising, leading to an inadequate sale price. Typically, auctioneers must be licensed in order to

6

conduct a live auction. 32 M.R.S. § 285 (2005). An exception exists for those who conduct foreclosure sales under a court order. *Id.* at § 286(5). This sale, however, was not held pursuant to a court order, and it is undisputed that the attorney who conducted the foreclosure sale was not a licensed auctioneer. Despite this defect, any penalty the attorney might face due to his lack of a license does not generate a cause of action for "wrongful foreclosure" on these grounds and does not affect the overall validity of the sale. As the Bank points out, this statute was intended to be regulatory and is not a vehicle by which a disgruntled debtor may challenge a foreclosure.

Also, the Ramseys' contention regarding inadequate sale price is a re-statement of their aforementioned claim and, likewise, does not constitute a "wrongful foreclosure." The Bank advertised the sale in newspapers of appropriate circulation in accordance with the foreclosure statute, and there is no actionable defect with respect to advertising. As Maine does not recognize this cause of action as a means of challenging foreclosures of real property, the Bank's motion for summary judgment on Count IV is Granted. Because the personal property sale was "commercially reasonable" under Article 9 of the UCC for the aforementioned reasons, summary judgment on Count V is Granted.

5.    Count VI – Unfair and Deceptive Trade Practices.

The Ramseys also allege a violation of Maine's Unfair Trade Practices Act ("UTPA") arising out of the foreclosure process. 5 M.R.S. § 207 (2005). The UTPA provides consumers with a method of recovery against merchants or retailers who conduct business in an "unfair or deceptive" manner. *Shapiro v. Haenn,* 190 F. Supp. 2d 64, 69 (D. Me. 2002). Maine law, however, specifically exempts financial institutions from the UTPA. *Id.* at 69; 9-B M.R.S. § 244 (2005). Enforcement of unfair practices by financial institutions rests with the state. *Id.* at § 241. The Ramseys' argue that the Bank

7

did not raise the issue before filing its motion for summary judgment and, therefore, should be estopped from raising it now. But, the Bank has essentially argued that the Ramseys have failed to state a claim upon which relief can be granted. This argument may be raised at any time during litigation, up to and including at trial. M.R. Civ. P. 12(h)(2).

Also, the Ramseys claim that the auction procedures are "not a banking activity" and therefore not exempt under the UTPA. Although the dispute in this case concerns an auction, the auction arose from the foreclosure, and addressing loan defaults certainly is a banking activity. The fact that an auction was held to dispose of the Quarterdeck does not affect the statutory exemption from financial institutions. Thus, the Bank's summary judgment motion is Granted on Count VI.

6.      Count VII – Fraudulent Transfer.

Lastly, the Ramseys contend that selling their property for an allegedly inadequate amount constitutes a fraudulent transfer, citing the Maine's Uniform Fraudulent Transfer Act ("UFTA"), 14 M.R.S. § 3571 et seq. (2005). The UFTA provides that a conveyance is "fraudulent *as to a creditor* whose claim arose before the transfer was made or the obligation was incurred" if the transaction did not earn a "reasonably equivalent value in exchange." *Id.* at § 3576(1) (emphasis added). Additionally, the debtor must either be insolvent when the transfer occurred or "become insolvent as a result of the transfer or obligation." *Id.*

This statute was intended to prevent financially unstable debtors from "transferring assets" to shield them from creditors. *Leighton v. Fleet Bank of Me.*, 634 A.2d 453, 458 (Me. 1993); *see also Morin v. Dubois*, 1998 ME 160, ¶ 8, 713 A.2d 956, 959 (UFTA applied where businessman fraudulently transferred some assets to his son to avoid creditors). The UFTA is inapplicable to the situation here, however, because the

8

Bank conducted a sale by foreclosure as a result of the Ramseys' defaults. Even if, as the Ramseys contend, the Bank conducted the foreclosure as a result of its own financial difficulties, this does not rise to the level of avoiding creditors through a transfer. Although the FDIC was conducting an investigation of the Bank's financial stability, it was not a creditor; its enforcement efforts were purely regulatory. Also, even viewing the Ramseys as creditors of Quarterdeck's because they guaranteed the loan as the financial backers of the LLC, they were essentially debtors of the Bank's. It does not follow that the UFTA would apply to them merely because they faced potential liability for any deficiency. Because this statute does not apply to this case, the Bank's summary judgment motion is Granted on this count.

7.    Counterclaim for Deficiency Judgment.

The Bank also moves for summary judgment on its counterclaim for a deficiency. While a debtor is responsible for any deficiency following a foreclosure sale, there remains a genuine issue of material fact as to how the Bank reached the interest figures that it did, and as to what the actual deficiency amount should be. As it is unclear whether the Bank subtracted the sale proceeds before making this calculation, its summary judgment motion on the counterclaim is denied.

The entry will be as follows:

1.    Summary judgment for Defendant on Count I of the complaint is Denied.

2.    Summary judgment for Defendant on Counts II, III, IV, V, VI and VII of the complaint is Granted.

3.    Summary judgment on the Bank's counterclaim for a deficiency judgment is Denied.

Dated:    January // , 2007

G. Arthur Brennan
Justice, Superior Court

R. A. Dyer, Esq. - PLS
P. R. Johnson, Esq. - DEF