# United States Court of Appeals

## For the First Circuit

_____

No. 98-2346

JOSEFINA RUBERT-TORRES,
IN REPRESENTATION OF HER MINOR DAUGHTER,
KIMAYRA CINTRON-RUBERT,
Plaintiffs, Appellants,

v.

HOSPITAL SAN PABLO, INC., ET AL.,
Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, Senior U.S. District Judge]

_____

Before

Torruella, Chief Judge,

Wallace,[*] Senior Circuit Judge,

and Lynch, Circuit Judge.

_____

Kevin G. Little, with whom David Efron and Law Offices of David Efron were on brief, for appellants.
Federico R. Ducoudray-Acevedo, with whom Law Offices Jiménez & Santoni was on brief, for appellee Hospital San Pablo.
Elisa M. Figueroa-Báez, with whom Law Offices Sigrid López González was on brief, for appellee Néstor Rivera-Cotté.

_____

[*] Of the Ninth Circuit, sitting by designation.

_____

March 6, 2000

_____

**WALLACE, Senior Circuit Judge**.  Josefina Rubert-Torres appeals from the district court's summary judgment in favor of one defendant and from the judgment entered upon a jury verdict for the other defendant.  The district court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction over Rubert-Torres' timely appeal pursuant to 28 U.S.C. § 1291.  We affirm in part, reverse in part, and remand for further proceedings.

## I.

Rubert-Torres brought this medical malpractice action on behalf of her daughter Kimayra Cintrón-Rubert, a 21 year-old woman with cerebral palsy, against Dr. Néstor Rivera-Cotté, the doctor who delivered Kimayra, and Hospital San Pablo (Hospital), where Kimayra was born.  Before trial, the district court entered summary judgment for the Hospital.  At trial, Rubert-Torres' theory, supported by an obstetrical/gynecological (OB/GYN) expert and a neurological expert, was that physician error during her pregnancy and delivery of Kimayra caused Kimayra's disabilities.  Dr. Rivera-Cotté's theory, supported by his own OB/GYN, neurological, and genetics experts, was that Kimayra's disabilities arose genetically.  The jury returned a verdict for Dr. Rivera-Cotté.

## II.

Rubert-Torres first contends that the district court erred in entering summary judgment sua sponte in favor of the Hospital.  This

argument is slightly misworded.  The district court did not enter summary judgment sua sponte; rather, it converted the Hospital's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), into a motion for summary judgment because Rubert-Torres attached an expert witness report to her opposition to the motion to dismiss.  We review whether the district court properly converted a Rule 12 motion into a motion for summary judgment for abuse of discretion.  See Whiting v. Maiolini, 921 F.2d 5, 6 (1st Cir. 1990).  Significantly, Rubert-Torres only makes this procedural argument against the entry of summary judgment; she does not contest the merits of the district court's decision.

We first recite the relevant facts.  Rubert-Torres filed the complaint on July 14, 1996; the Hospital answered on October 7, 1996.  Discovery started, and two scheduling conferences were held, with all parties represented, on November 26, 1996, and on April 30, 1997.  At the second conference, the Hospital requested that Rubert-Torres support her allegations against it with specific facts, which she failed to do.  At that point, discovery was apparently well underway: Rubert-Torres had received four expert witness reports and 20 years of medical records, interrogatories had been filed, and depositions taken.

When Rubert-Torres failed to support her allegations against the Hospital with specific facts, the Hospital filed a motion on May 7, 1997, for judgment on the pleadings, pursuant to Federal Rule of Civil

Procedure 12(c). Rubert-Torres filed an opposition to the motion on May 14, 1997, including with it an expert witness report derived from discovery. On August 15, 1997, the district court, without previously providing notice, converted the motion for judgment on the pleadings into a motion for summary judgment, relied on the expert report, and entered an order for summary judgment in favor of the Hospital.

Rule 12(c) provides, in part:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c). In this regard, the rule is identical to Rule 12(b)(6), see Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998), and relevant Rule 12(b)(6) case law on conversion assists this Rule 12(c) conversion case.

Conversion of a motion for judgment on the pleadings into one for summary judgment should only occur after the parties have been offered a "reasonable opportunity" to present pertinent summary judgment materials. Fed. R. Civ. P. 12(c). Whether the parties had an "opportunity to respond necessarily turns on the way in which the particular case under consideration has unfolded." See Whiting, 921 F.2d at 6. Thus, we have disfavored conversion when (1) the motion

comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur.  See id. at 7.

In this case, however, these considerations are not present. The Rule 12(c) motion came 10 months after the complaint -- and subsequent to the Hospital's request that Rubert-Torres support her allegations.  There had been substantial discovery.  Finally, Rubert-Torres was on constructive notice that conversion could occur. Explicit notice is not required. See Collier, 158 F.3d at 603; C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d 41, 43 (1st Cir. 1998).  Rubert-Torres had constructive notice because she presented the district court with additional materials in her opposition memorandum. As we recently held, "a party receives constructive notice that the court has been afforded the option of conversion . . . when . . . the non-movant appends . . . materials [outside the pleadings] to [an] opposition and urges the court's consideration of them." Collier, 158 F.3d at 603.  When a plaintiff incorporates materials outside the pleadings into an opposition to a Rule 12(c) motion, the plaintiff "implicitly invite[s] conversion -- and a party who invites conversion scarcely can be heard to complain when the trial court accepts the invitation." Id.; see also Maruho Co., Ltd. v. Miles, Inc., 13 F.3d 6, 8 (1st Cir. 1993) (holding conversion proper when plaintiff presented

-6-

information outside the pleadings to the district court in opposition to a motion to dismiss).

Rubert-Torres argues that she did not invite the district court to convert the Rule 12(c) motion into a summary judgment motion because the attaching of the expert report was for the limited purpose of indicating "that further details regarding her claim against Hospital San Pablo had been provided in discovery." Her assertion is a stretch. In her response to the Hospital's Rule 12(c) motion, Rubert-Torres stated that the contentions in the motion were "more properly framed as a motion for a more definite statement under Federal Rule of Civil Procedure 12(e)," and that to "the extent that Hospital San Pablo's motion is in effect a 12(e) motion, it has been mooted by the provided report of plaintiff's obstetrical expert, Dr. Bernard Nathanson." However, Rubert-Torres not only relied upon Dr. Nathanson's report for the limited purpose of refuting the Hospital's motion, to the extent that it was a 12(e) motion, she also used it to argue the merits of the Rule 12(c) motion, stating: "The departures from the applicable standard of care identified by Dr. Nathanson show that Hospital San Pablo failed to comply with its legal duties under Puerto Rico law." This statement directly responded to the Hospital's contention that, pursuant to applicable law, it was not liable for Kimayra's condition, and implicitly invited the district court to consider the expert report for Rule 12(c) purposes.

It is true, as Rubert-Torres argues, that not every attachment to a Rule 12(c) motion or opposition thereto requires conversion into a motion for summary judgment.  See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  However, in this situation, Rubert-Torres invited the district court to consider Dr. Nathanson's report in its ruling on the merits of the Rule 12(c) motion, and thus invited the court to convert the Rule 12(c) motion into one for summary judgment.  See Collier, 158 F.3d at 603; Fed. R. Civ. P. 12(c).  The district court did not abuse its discretion when it accepted that invitation.

## III.

Rubert-Torres also raises numerous arguments in favor of a new trial against Dr. Rivera-Cotté.  We address two of those arguments -- that Kimayra was improperly excluded from the courthouse, and that she should have been allowed to appear for a physical demonstration during questioning of an expert witness.

## A.

Kimayra was present on the first day of trial and was briefly introduced to the pool of potential jurors before jury selection.  Her attorney explained to the potential jurors that "she will not be with us in the trial for obvious reasons for a lot of the trial, but she is entitled to be here."  He also explained that she would not be present

during jury selection because she "was getting a little restless" at the time and they did not want her "to disrupt the proceedings."

Shortly thereafter, the district court banned Kimayra from the courtroom during opening statements. The record reflects that her attorneys did not request, and the district court did not offer, a reason for the decision. Then, apparently off the record in chambers, the district court banned Kimayra not only from the courtroom, but from the entire courthouse for the duration of trial.

Dr. Allan Hausknecht, a neurologist, testified for Rubert-Torres. He stated that one possible cause of Kimayra's cerebral palsy was a genetic factor; that there were about 20 or 30 different physical characteristics that might show that Kimayra had genetic abnormalities; that he physically examined her and looked for those characteristics in her; and that he concluded, based upon her appearance, that her cerebral palsy was not the result of a genetic abnormality. He stated that he could demonstrate this if Kimayra were present -- otherwise it would be hard to do so. Rubert-Torres asked the district court to allow Kimayra into the courtroom briefly so that Dr. Hausknecht could physically show the jury that Kimayra did not exhibit those characteristics. The defense objected to Kimayra's presence in the courtroom, and the district court, without explanation, sustained the objection. Rubert-Torres's attorney attempted to continue asserting his position, and the district court cut him off, saying "I said the

objection is sustained."  Shortly thereafter, out of the presence of the jury, Rubert-Torres's attorney asked for reconsideration:

> If I had -- if I -- Your Honor, before I move into another area of the testimony, I just want to reiterate that I think his merely verbal testimony rather goes to characteristics that he saw in Kimayra.  To rule on the genetics problem, is an extremely -- actually demonstrating those with the girl, and I don't see any undue prejudice in that.

> After all, she is the plaintiff, and it is the best way of making the testimony very clear, and you know it's clearly probative.  To the extent that it might be prejudicial because the girl is pitiful-looking, quite frankly -- but it's very important to show that it's not a genetic problem.  That's the issue of this case.

> And to the extent that we are not going to be able to do that, I wanted to preserve my objection for the record and actually to ask for reconsideration of your decision.

The district court denied reconsideration without explanation, but assured Rubert-Torres's attorney that his objection was "preserved for the record."

Later in the trial, Dr. Rivera-Cotté's pediatric neurological expert, Dr. Jesús Vélez-Borrás, also discussed the importance of examining Kimayra's physical appearance to determine whether her cerebral palsy was genetic in origin.  Dr. Vélez-Borrás' testimony contradicted that of Dr. Hausknecht:  based upon his physical examination of Kimayra, Dr. Vélez-Borrás concluded that her condition

was genetic in nature.  Dr. Aubrey Milunsky, a genetics expert who testified for Dr. Rivera-Cotté, also partially based his conclusion that Kimayra's cerebral palsy was genetic in origin on her physical appearance.

## B.

Rubert-Torres argues that the district court violated Kimayra's due process rights when it barred Kimayra from the courtroom and eventually from the courthouse entirely, and that it abused its discretion in refusing, without explanation, to allow the neurological demonstration requiring Kimayra's presence in the courtroom.  There is no dispute that Rubert-Torres preserved these issues in the district court.  We review the district court's decision to exclude Kimayra from the courthouse for abuse of discretion.  See González-Marín v. Equitable Life Assurance Soc'y, 845 F.2d 1140, 1146 (1st Cir. 1988). We also review evidentiary rulings, such as the district court's decision to disallow Kimayra's presence in the courtroom for evidentiary purposes, for abuse of discretion.  See Lynch v. City of Boston, 180 F.3d 1, 15 (1st Cir. 1999).

## 1.

We first examine the district court's decision to ban Kimayra from the courthouse.  Rubert-Torres relies heavily upon Helminski v. Ayerst Lab., 766 F.2d 208 (6th Cir. 1985), which we cited with approval in González-Marín, 845 F.2d at 1146.  Helminski held that a court may

-11-

"exclude the plaintiff or limit [her] presence" without denying due process, 766 F.2d at 217, if her "mere presence . . . would render the jury unable to arrive at an unbiased judgment concerning liability," id., and she cannot "understand the proceedings and aid counsel." Id. at 218; González-Marín, 845 F.2d at 1146 ("We agree with the ruling of the Helminski court that a trial court may decide to bar from the courtroom a disabled plaintiff incapable of comprehending judicial proceedings during the liability phase of a trial in order to prevent prejudicing the jury."). This is so because, in that situation, the court must balance the plaintiff's due process rights with the defendant's right to an unbiased jury trial. See Helminski, 766 F.2d at 217.

Helminski outlined steps a court could take to determine whether the plaintiff could be excluded. In the usual case involving a disabled plaintiff, both parties, before trial, should raise the issue of prejudice of the jury, and the district court should hold an evidentiary hearing at which it "observes the injured party." Id. At the hearing, the defendant has the burden of persuasion to show that the plaintiff should be excluded because his or her "mere presence will prejudice the jury." Id. Only if the defendant persuades the district court of jury prejudice should the court question whether the plaintiff "can comprehend the proceedings and assist counsel in any meaningful way." Id. at 218. A plaintiff may only be excluded from court if both

-12-

her presence would prejudice the jury and she cannot understand counsel and assist in the case.  See id.

In this case, the district court apparently decided to exclude Kimayra from the courthouse in a meeting with counsel in chambers after trial had begun.  No record of the discussion was made; therefore, we cannot know what occurred.  There is no record of an evidentiary hearing.  There is no indication whether the district court considered Helminski, even though we stated our approval of it in González-Marín.  The court had observed Kimayra, but did not hold an evidentiary hearing to determine prejudice of the jury.  There is no record that Rivera-Cotté, who sought Kimayra's exclusion at trial, was required by the district court to bring forward evidence that Kimayra's very presence would jeopardize his right to an unbiased jury trial. The district court did not make findings of fact and conclusions of law on the record as to jury prejudice, or as to the extent to which Kimayra could comprehend and assist counsel at trial.  We are thus left to review the court's decisions in a vacuum, entirely unable to determine the precise reasons why it banned Kimayra from the courtroom and the courthouse.

Because of the lack of record, we are hesitant to address this important due process issue, especially if there must be a new trial on the second issue.  We therefore turn to the evidentiary question.

**2.**

Rubert-Torres contends there was reversible error in the district court's refusal, after Dr. Rivera-Cotté's objection, to allow Kimayra in the courtroom for the purpose of a physical demonstration during Dr. Hausknecht's testimony. The court neither stated the evidentiary rule upon which it relied, nor allowed argument on the objection, nor made findings concerning the prejudicial versus probative effect of the evidence. We can only assume that its decision was based upon Federal Rule of Evidence 403, which excludes relevant evidence because its prejudicial effect is substantially greater than its probativeness.

We do not always require explicit findings on a Rule 403 decision, see Navarro de Cosme v. Hospital Pavía, 922 F.2d 926, 931 (1st Cir. 1991), although they would assist us in our review obligation. See 2 Weinstein's Federal Evidence § 403.03, at 403-31 to 403-32 (2d ed. 1999) ("When a trial judge excludes evidence under Rule 403, the judge should make a clear statement of the reason for the record . . . . [R]easoned explanations are the very essence of judicial method.") (internal quotation omitted). In our review, we give district courts "substantial deference" in Rule 403 decisions. Espeaignnette v. Gene Tierney Co., Inc., 43 F.3d 1, 8 (1st Cir. 1994). The question before us is whether the district court abused its discretion in excluding the physical demonstration.

-14-

Clearly, the evidence was highly relevant.  As has been explained, experts for both Rubert-Torres and Dr. Rivera-Cotté relied upon Kimayra's physical appearance to make expert conclusions.  They disagreed as to what they saw and the resultant conclusions differed.  While those experts were allowed to describe Kimayra's appearance for the jury, the "clearest evidence" on her physical appearance would have been for the jury to see her, which is usually favored over mere description.  4 Wigmore on Evidence § 1158 (Chadbourn rev. 1972); see also id. § 1151; Rich v. Ellerman & Bucknall S.S. Co., 278 F.2d 704, 708 (2d Cir. 1960) ("Limitation of proof of the nature of the injuries to a description by a doctor was unduly restrictive.  Autoptic proference is always proper, unless reasons of policy apply to exclude it.").  Additionally, in this case, the evidence was fundamental to the central issue in the case:  causation.  When proffered evidence relates to the central issue in a case, it is a difficult matter indeed to show that the prejudicial effect of that evidence substantially outweighs its highly probative nature, as Rule 403 requires.  See Espeaignnette, 43 F.3d at 8-9; Swajian v. General Motors Corp., 916 F.2d 31, 34-35 (1st Cir. 1990).  We have no findings and no statement to explain the district court's apparent disregard for this highly probative evidence on the central issue at trial.

In addition, even assuming the jury view preference was somewhat prejudicial, the district court could have used a less

restrictive means to minimize the prejudice than entirely excluding Kimayra from the courtroom. For instance, the court might have considered limiting the amount of time she would be present before the jury, allowing her to enter and exit the courtroom outside the jury's presence, and giving limiting instructions -- all of which might minimize prejudice without requiring exclusion. See González-Marín, 845 F.2d at 1146-47; Helminski, 766 F.2d at 217; 4 Wigmore on Evidence, supra § 1158. Because the Federal Rules of Evidence favor the admissibility of evidence, less intrusive measures to minimizing the prejudicial effect of evidence are preferred to excluding evidence. See 2 Weinstein's Federal Evidence, supra § 403.02[2][c].

Finally, we are concerned about the somewhat arbitrary nature of the district court's Rule 403 ruling. We have reversed other Rule 403 exclusions when, as in this case, the evidentiary question is complex and not self-evident, the district court ruled before allowing a response to the objection, there were no findings on prejudice and probativeness, and a "hair-trigger" decision was made. See United States v. Brooks, 145 F.3d 446, 454-55 (1st Cir. 1998), citing In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 836 (3d Cir. 1990) and United States v. Roberts, 978 F.2d 17, 24-25 (1st Cir. 1992).

We conclude that this is one of those rare and "extraordinarily compelling circumstances" in which we must "reverse a district court's on-the-spot judgment concerning the relative weighing

-16-

of probative value and unfair effect." <u>Espeaignnette</u>, 43 F.3d at 5. We do not do so lightly, but because of the highly probative nature of the jury view of Kimayra, the lack of use of less restrictive means of eliminating the prejudicial effect of the evidence, and the "arbitrary manner in which the judge proceeded [which] furnishes a complementary reason, powerful in itself," <u>Brooks</u>, 145 F.3d at 455, we hold that the district court abused its discretion in disallowing the demonstrative evidence.

Of course, error in this evidentiary ruling does not require reversal unless it is harmful. "Our [harmlessness] inquiry is whether exclusion or admission of the evidence affected plaintiff's substantial rights. The central question is whether this court can say with fair assurance that the judgment was not substantially swayed by the error." <u>Lynch</u>, 180 F.3d at 15. On such a central issue as causation, and in the absence of specific findings of prejudice, it would be speculation at best, much less with fair assurance, to say that the jury verdict was unaffected by the error.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**