DECISION
Before this Court is Defendants' Mortgage Electronic Registration Systems (MERS), IndyMac Bank, FSB (IndyMac), and OneWest Bank FSB's (OneWest), (collectively, Defendants) Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Rhode Island Superior Court Rules of Civil Procedure. Plaintiffs Christopher A. Payette and Dale J. Payette (Plaintiffs) filed a declaratory judgment action that petitions the Court to quiet title to certain real property located at 5 School Street, Warwick, Rhode Island (the property). This action arises out of Plaintiffs' challenge to Defendant OneWest's foreclosure sale of the property on October 16, 2009, and the title the foreclosure buyer acquired through the foreclosure sale.
 I FACTS TRAVEL
On June 6, 2006, Plaintiffs executed a promissory note in favor of IndyMac in the amount of $250,000. (Answer Ex. C (hereinafter, "Note").) Plaintiffs also executed a mortgage on the property to secure payment of the Note, naming IndyMac as the lender *Page 2 
and MERS as the mortgagee and as nominee of IndyMac and IndyMac's successors and assigns. (Compl. Ex. 1; Answer Ex. B (hereinafter, "Mortgage").) On June 12, 2006, the Mortgage was recorded in the Land Evidence records for the City of Warwick, Book 6209 at Page 57. IndyMac thereafter endorsed the Note in blank to Deutsche Bank.[1] IndyMac continued to service the Note on behalf of Deutsche Bank.
On July 11, 2008, the Office of Thrift Supervision closed IndyMac and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver for IndyMac. (Answer Ex. D.) FDIC reorganized IndyMac into a new entity it named IndyMac Federal, and transferred all of IndyMac's assets to IndyMac Federal (Answer Ex. E.) Then, FDIC, still acting as receiver for IndyMac Federal, transferred the rights associated with the Note to OneWest. (Pls.' Obj. to Mot. for J. on the Pleadings, unmarked ex.) Contemporaneously, MERS assigned its mortgagee interest to OneWest. (Answer Ex. F.)
Plaintiffs do not dispute that they defaulted on the Note. OneWest, as note holder and as assignee of MERS' status as mortgagee and nominee to the original lender, IndyMac and IndyMac's successors and assigns, initiated the foreclosure process in August of 2009. Plaintiffs filed the instant action on October 7, 2009, the day before the scheduled foreclosure sale. The parties agreed to reschedule the foreclosure sale to October 16, 2009. Meanwhile, this Court denied Plaintiffs' request for a preliminary injunction. The foreclosure sale took place as scheduled on October 16, 2009.
Defendants filed the instant Motion for Judgment on the Pleadings on January 11, 2011. Plaintiffs objected March 25, 2011. On the date of the scheduled hearing, March *Page 3 
31, 2011, this Court issued its decision in Porter v. First NCLFinancial Services, No. PC-10-2526, 2011 WL 1251246 (R.I. Super.). The parties agreed to submit supplemental memoranda to discuss the impact of thePorter decision on the instant motion. This Court then took the matter under advisement.
 II STANDARD OF REVIEW A Conversion
Before the Court is Defendants' Motion for Judgment on the Pleadings. Also before the Court, however, are documents that are attached as exhibits to the various filings that relate to the instant motion. "Strictly speaking, matters outside the pleadings are not relevant" to a motion for judgment on the pleadings. Kent et al, R.I. Civil App. Proc., § 12:13 (2006) (hereinafter Kent). If "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Super. R. Civ. P. 12(c).
The submission of additional materials does not automatically result in conversion of a motion for judgment on the pleadings into a motion for summary judgment. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Super. R. Civ. P. 10 (c). Further, exhibits may be incorporated by reference into a pleading; these referenced exhibits are also considered a part of the pleading.Kent § 10:3. When the exhibits associated with a motion for judgment on the pleadings were included with or incorporated into the pleadings, the proper standard of review remains that for judgment on the pleadings. See Super. R. Civ. P. 10 (c);Kent §§ 10:3, 12:13. *Page 4 
If, however, either party submits new materials outside of its exhibits to the pleadings in support of its position on a motion for judgment on the pleadings, the court must decide whether to include these materials in its adjudication. If the court excludes these materials, it will apply the Rule 12(c) standard. If the court includes these materials, "the motion shall be treated as one for summary judgment." Super R. Civ. P. 12(c). The distinction between Rule 56 and Rule 12(c) is "salient . . . because Rule 56 erects a hurdle for the nonmovant that is far more difficult to clear than the relatively modest hurdle posed by Rule 12(c)." GulfBank Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir., 2004).[2]
Here, Defendants' Motion does not introduce new material — it includes only the Complaint with its exhibits[3] and the Answer with its exhibits.[4] Pursuant to Rule 10(c), the Court may consider only these documents under the Rule 12(c) standard. Plaintiffs, *Page 5 
however, submitted numerous exhibits with their Objection and Supplemental Memorandum.[5] Defendants' Supplemental Memorandum also contains an additional item.[6] These items show the Mortgage travel from IndyMac (the loan originator) to MERS, FDIC, IndyMac Federal, and ultimately OneWest (the foreclosing bank). These items show the Note travel from IndyMac to FDIC, IndyMac Federal, and ultimately OneWest. Thus, the Court must decide whether to exclude these materials because they are outside the pleadings and adjudicate using the judgment on the pleadings standard of review, or include them and convert the Motion into a motion for summary judgment.
The decision to include or exclude proffered materials in connection with a Rule 12(c) motion is entrusted to the sound discretion of the court. Gulf Bank Trust Co.,355 F.3d at 38. To convert a motion for judgment on the pleadings into one for summary *Page 6 
judgment, the Court must be satisfied that the party opposing the motion had adequate notice of conversion and a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Super. R. Civ. P. 12(c).
Notice to the parties does not need to be an express warning from the Court. Collier v. City of Chicopee,158 F.3d 601, 603 (1st Cir. 1998) (citing C.B. Trucking,Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 43 (1st Cir. 1998);Rodriguez v. Fullerton Tires Corp.,115 F.3d 81, 83 (1st Cir. 1997) (conversion of 12(b) motion));see also Gulf Coast Bank Trust,335 F.3d at 38 (when converting, "[e]xpress notice is not required."). The Court need only find that the parties have constructive notice of conversion potential. Collier,158 F.2d at 603 (citing Rodriguez, 115 F.3d at 83).
The movant's submission of materials outside the pleadings puts the nonmovant "squarely on notice that the court ha[s] the option of treating the motion as one for summary judgment."Rodriguez, 115 F.3d at 83. Likewise, "[l]ogic dictates that the same result must obtain when the non-movant appends such materials to his opposition." Collier, 158 F.3d at 603;see also Rubert-Torres v. Hosp. San Pablo Inc.,205 F.3d 472, 476 (1st Cir. 2000). The Court may then convert the motion without providing explicit notice to the parties.Rubert-Torres, 205 F.3d at 475-76. In Rubert-Torres, the First Circuit Court of Appeals upheld the District Court's decision to convert without warning the parties of its intent to convert.Id. at 475. The Court of Appeals viewed the nonmovant's submission of a single piece of evidence with its objection to the movant's 12(c) motion as an invitation to convert the motion.Id. at 475-76. Further, the Court of Appeals reasoned that the ten-month period from the start of the case to the dispositive motion was ample time for the nonmovant to have gathered the evidence necessary to *Page 7 
oppose a motion for summary judgment. Id. at 425.
Here, Defendants' original motion on the pleadings included only the pleadings. It was Plaintiffs that opened the door to conversion with their objection and supplemental memorandum, which are, combined, accompanied by no less than nine (9) new exhibits. Plaintiffs have received adequate notice of conversion because Plaintiffs themselves invited conversion. Rubert-Torres,205 F.3d at 475-76. In fact, Plaintiffs inform the Court that their submission of certain exhibits "are in effect affidavits in Support of a Rule 56 Summary Judgment Motion." (Pls.' Mem. in Obj. to Defs.' Mot at 42.) Moreover, Plaintiffs accuse Defendants of mislabeling their Motion for Judgment on the Pleadings as a Motion for Summary Judgment. (Pls.' Mem. in Obj. to Defs.' Mot. at 43.) These statements assure the Court that Plaintiffs have had "ample notice of the impending conversion." Collier, 158 F.3d at 603. Defendants' Supplemental Memorandum contains a single new exhibit: A flow chart purporting to track the travel of the Note and Mortgage. Thus, Defendants show they are also on notice of conversion by their own actions and by acquiescence to Plaintiffs' submission of voluminous materials that are outside those attached to or incorporated by reference into the pleadings.
Since both parties demonstrated that they harbor no reservations about conversion, and in fact invite the action, the Court must decide whether to include the additional materials and convert the motion. The Court will include the materials if they are pertinent to the Court's summary judgment analysis. Super. R. Civ. P. 12(c).
The pleadings include the Mortgage, assignment of the Mortgage, foreclosure documents, the Note, and some paperwork relating to the status of IndyMac. Plaintiffs' objection adds the Power of Attorney authorizing FDIC to transfer the assets previously *Page 8 
owned by IndyMac to OneWest. This exhibit is pertinent to the resolution of Plaintiffs' argument that a disconnection between the Note and Mortgage occurred, and that the wrong party foreclosed, because this document details the final disposition of the Note, which is to an entity that through assignment also owns and controls the Mortgage.
Other materials outside the pleadings include both parties' flow charts purporting to show the travel of the Note and Mortgage. This Court also finds these demonstrative exhibits pertinent to the summary judgment inquiry, given Plaintiffs' claim that each transfer affected Plaintiffs' obligations and Defendants' rights thereto. Should other exhibits of Plaintiffs become pertinent, the Court will address them in the analysis.
The Court is satisfied that the parties are squarely on notice that conversion may occur. Gulf Coast Bank Trust,335 F.3d at 38; Rodriguez, 115 F.3d at 83. Indeed, both parties invited conversion by submitting materials outside the pleadings. Rubert-Torres, 205 F.3d at 475-76. Moreover, Rule 12(c)'s requirement that the parties receive a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56" has been satisfied. This litigation was initiated in November of 2009. The instant Motion was filed in February of 2011. Plaintiffs objected and the parties conferenced the matter with this Court in April of 2011. At this event, the Court instructed the parties to submit supplemental memoranda the following month. Plaintiffs again submitted extra-pleading materials with their Supplemental Memorandum, and Defendants submitted an extra-pleading item with their Supplemental Memorandum. This nearly two (2) year period from initiation of the case to the instant Motion is significantly longer than the ten (10) month period that theRubert-Torres Court found sufficient to justify converting a motion without previously notifying the parties.Rubert-Torres, 205 F.3d at 475. Lastly, *Page 9 
the Court finds the additional materials pertinent to its review under the summary judgment standard. Super. R. Civ. P. 12(c). Therefore, the Court will consider the materials presented outside the pleadings and convert Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment.
 B Summary Judgment Standard of Review
This Court will only grant a motion for summary judgment if "after reviewing the admissible evidence in the light most favorable to the nonmoving party[,]" Liberty Mut. Ins. Co. v. Kaya,947 A.2d 869, 872 (R.I. 2008) (quoting Roe v. Gelineau,794 A.2d 476, 481 (R.I. 2002)), "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super. R. Civ. P. 56(c). The nonmoving party "has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Liberty Mut.,947 A.2d at 872 (quotation omitted). To meet this burden, "[a]lthough an opposing party is not required to disclose in its affidavit all its evidence, he [or she] must demonstrate that he [or she] has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact." Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998) (quotation omitted). *Page 10 
 III DISCUSSION
In Porter, No. PC-10-2526, 2011 WL 1251246, this Court adopted our Superior Court's rulings and reasoning in Bucci v.Lehman Bros. Bank, No. PC-2009-3888, 2009 WL 3328373 (R.I. Super. August 25, 2009). BothPorter and Bucci concerned the propriety of foreclosure sales conducted by MERS, one of the Defendants in this case. This case presents many of the same facts critical to the analyses in those cases. Thus, to the extent that this case presents similar facts implicating the same legal issues, this Court will followPorter and Bucci. The Court will then address the additional issues that are unique to this case.
The Court finds that the undisputed exhibits demonstrate a chain of title to the mortgage that is consistent with the right of OneWest ultimately to conduct the mortgage sale. SeeGilbert v. Fed. Nat. Mortg. Ass'n, No. No. 2010-3158, 2011 WL 1364019 (Mass. Super. Mar. 31, 2011) (granting a motion to dismiss a similar complaint on reasoning consistent with Porter, Bucci, and In ReHuggins, discussed infra).
 A Defendants' Authority To Transfer the Note andMortgage
Plaintiffs claim that the assignments of the Mortgage were prohibited by the Mortgage agreement itself and by Rhode Island law, specifically Chapter 11 of Section 34 of the Rhode Island General Laws. Plaintiffs claim that these Mortgage transfers resulted in an illegal foreclosure sale by OneWest. In support of these claims, Plaintiffs assert three inter-related arguments, which the Court will address seriatim.
Plaintiffs' first argument is based in contract. Plaintiffs argue that IndyMac, the *Page 11 
lender, lacked contractual authority to assign the Mortgage and its attendant rights to MERS. (Compl. ¶¶ 13-14, 20, 22-27.) The clear and unambiguous language of the mortgage at issue here (Answer Ex. B) is the same operative language as the mortgages inPorter and Bucci. See Porter, No. PC-10-2526, 2011 WL 1251246 (Defs.' Supp. Mem. in Supp. of Mot. for Summ. J. Ex. A); Bucci, No. PC-2009-3888, 2009 WL 3328373 (Defs.' Mot. for Summ. J. Ex. B). Thus, following the holdings and rationale of Porter andBucci, this Court finds that no factual dispute exists as to the contractual soundness of the lender's assignment of the Mortgage to MERS as the lender's nominee and mortgagee. SeePorter, No. PC-10-2526, 2011 WL 1251246 at *2, 5;Bucci, No. 2009-3888, 2009 WL 3328373 at *2, 4-5. In fact, there is no language in either the Note or Mortgage that prohibits the holder thereof from transferring or assigning the instruments.
Plaintiffs' second argument is based in statutory construction. Plaintiffs maintain that R.I.G.L. 1956 § 34-11-21 prohibited IndyMac's assignment of the mortgage to MERS and MERS' subsequent actions taken as IndyMac's nominee. Pursuant to Porter andBucci, the Court finds that the assignment here was sound as a matter of law. See Porter, No. PC-10-2526, 2011 WL 1251246 at * 4-5; Bucci, No. 2009-3888, 2009 WL 3328373 at * 6-7.
The Court pauses to address a factual distinction presented in this case that Plaintiffs argue compels the Court to deviate from the rulings in Porter and Bucci. Porter andBucci concerned foreclosures conducted by MERS, the lender's original nominee and mortgage assignee. See Porter, No. PC-10-2526, 2011 WL 1251246 at *2; Bucci, No. 2009-3888, 2009 WL 3328373, at *2. Here, the original lender, IndyMac, assigned *Page 12 
the Mortgage to MERS; MERS then assigned its nominee status and mortgagee interest to OneWest, the foreclosing party. See
Compl. ¶ 18; Answer ¶ 18. All of these Mortgage assignments were properly recorded pursuant to §§ 34-13-1 et seq.
The Court is not convinced that this fact makes a difference in its analysis. Plaintiffs agreed by signing the Mortgage to "mortgage, grant, and convey [the property] to MERS . . . and to the successors and assigns of MERS." (Mortgage at 3.) Plaintiffs granted the mortgagee interest — which included but was not limited to exercise of the statutory power of sale — i.e., the right to foreclose — to MERS and to MERS' "assigns," indicating Plaintiffs' consent to MERS' assignment. Moreover, besides the direct permission to assign, Plaintiffs also granted MERS "the right to exercise any and all of [the lender's] interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing this Security Instrument." (Mortgage at 3.) Plaintiffs unequivocally permitted the lender to assign the mortgage to MERS. Plaintiffs cannot now claim that MERS, to which Plaintiffs specifically approved granting all the rights of the lender, could not take that very same action expressly permitted of the lender. Thus, MERS' assignment to OneWest was permitted by the unambiguous Mortgage language. Plaintiffs' argument that the assignment to OneWest was prohibited by §§ 34-11-21, 22 is likewise unavailing. SeePorter, No. PC-10-2526, 2011 WL 1251246 at *4-5;Bucci, No. 2009-3888, 2009 WL 3328373 at *6-7.
Plaintiffs' third argument for invalidation of the foreclosure sale is based in agency law. Plaintiffs argue that when the Office of Thrift Supervision placed IndyMac into receivership, IndyMac "died," which terminated IndyMac's relationship with MERS. *Page 13 
(Compl. ¶ 20; Pls.' Mem. in Obj. to Defs.' Mot. at 8-9.) Here, the reorganization of IndyMac, like the alleged bankruptcy of thePorter lender, did not affect MERS' contractual and statutory authority as nominee of the lender. See Porter, No. PC-10-2526, 2011 WL 1251246 at *4. As a matter of contract, the Mortgage signed by Plaintiffs recognized MERS' rights to act as nominee for IndyMac and for IndyMac's "successors and assigns." (Mortgage p. 3.) Thus, "whatever financial entity currently holds the beneficial interest of the Note, MERS is designated the nominee of [that entity] based upon the broad language contained in the Mortgage Agreement." Porter, No. PC-10-2526, 2011 WL 1251246 at *4.
Indeed, statutory law on receivership and reorganization compels this result. Pursuant to 12 U.S.C. § 1821(d)(2)(A), FDIC lawfully succeeded to the rights and assets of IndyMac. Pursuant to 12 U.S.C. § 1821 (d)(2)(G)(i), FDIC properly transferred those rights and assets to the newly created IndyMac Federal The entity that purchases the asset from the receiver has acquired all the rights of the note holder and mortgagee by way of its purchase from the receiver. 12 U.S.C. § 1821(d)(2)(A); 12 U.S.C. § 1821 (d)(2)(G)(i);see also Gilbert, No. 2010-3158, 2011 WL 1364019
(Mass. Super. Mar. 31, 2011) (dismissing similar complaint, reasoning that the foreclosure sale, which was conducted by the party that purchased the note and mortgage from the receiver, was valid pursuant to 12 U.S.C. § 1821). *Page 14 
 B Disconnection
Plaintiffs further contend that IndyMac's initial assignment of the Mortgage to MERS disconnected the Note and Mortgage, leaving both obligations invalid at their inception. (Compl. ¶¶ 38-39; Pls.' Mem. in Obj. to Defs.' Mot. at 20, 24-25.) The Court disagrees. The analyses in both Porter and Bucci presuppose that an assignment of the mortgage to MERS does not fatally disconnect the Note and Mortgage. Courts in other jurisdictions have squarely addressed this contention, and have found that no disconnection occurs. See, e.g., Bassilla et al v. GMAC Mortgage,et al, No. 09-J-519 (Ma. App. Ct. Dec. 4, 2009); Jackson v.Mortgage Elec. Registration Sys., Inc.,770 N.W. 2d 487 (Minn. S. Ct. 2009); U.S. Bank Nat'lAssoc. v. Flynn, No. 4215/2008 (N.Y. Sup. Ct. Mar. 12, 2010);Silvia Merino, et al v. EMC Mortgage Corp., et al, No. 09-cv-1121 (E.D. Va. Mar. 11, 2010). This Court finds the voluminous and well-reasoned authority on this matter persuasive. Particularly bearing in mind Bucci, which adopted the reasoning of In re Huggins,357 B.R. 180 (Bankr. D. Mass. 2006), this Court finds that no disconnection occurred. Thus, at the time of the foreclosure, the foreclosing entity OneWest exercised all of the rights as assignee of the Mortgage and as holder of the Note. Consequently, this Court finds that OneWest was permitted to take any action related to exercise of the statutory power of sale as mortgagee and note holder. See Bucci, No. 2009-3888, 2009 WL 3328373 at *5-6.
Additionally, it is notable that in this case, the Mortgage and Note were clearly reunited when both documents were transferred to OneWest, the foreclosing party. See Answer Ex. F (MERS' assignment of the Mortgage to OneWest); see also FDIC Power *Page 15 
of Attorney (unmarked exhibit to Pls.' Obj. to Defs.' Mot.) (authorizing transfer of its assets to OneWest, which included the Note receivable from Plaintiffs).
 C Attack on the MERS System i Standing
Plaintiffs submitted exhibits purporting to prove MERS' misconduct in its handling of Plaintiffs' Mortgage. These exhibits are not accompanied by affidavits certifying to the exhibits' authenticity, despite the fact that this litigation has been ongoing for nearly two (2) years. See Rubert-Torres,205 F.3d at 475 (holding that the ten-month period was ample time within which to conduct discovery to adequately oppose a 12(c) motion that was converted without notice into a summary judgment motion). Defendants argue that Plaintiffs lack standing to assert these claims, as Plaintiffs are strangers to any action MERS took regarding the Mortgage.
Courts have widely held that homeowners lack standing to challenge the propriety of mortgage assignments and the effect those assignments, if any, could have on the underlying obligation.Fryzel v. Mortgage Elec. Registration Sys., et al, No. 10-352M, (D.R.I. June 10, 2011) (citing, inter alia,Livonia Props. Holdings, L.L.C. v. 12840-12976 Farmington Rd.Holdings, 717 F. Supp. 2d 724, 747 (E.D. Mich. 2010);Turner v. Lerner, Sampson, Rothfuss, No. 1:11-CV-00056 (N.D. Ohio Apr. 11, 2011); Bridge v. Ames Cap. Corp., No. 1:09 CV 2947 (N.D. Ohio Sept. 29, 2010); Jarbo v. BAC HomeLoan Servicing, No. 10-12632 (E.D. Mich. Dec. 15, 2010));see also Sharon McGann HorstKamp, MERS Case LawOverview, 64 Consumer Fin. L.Q. Rep. 458 (Winter 2010). *Page 16 
This Court agrees and finds that Plaintiffs do not have standing to attack the foreclosure on these grounds.
The rationale of excluding homeowners/debtors from interfering with legitimate commercial transactions between financial institutions is entirely consistent with this Court's determination that the commercial transfers of the Note and Mortgage, to which Plaintiffs agreed, were entirely lawful. The dispute as to how the foreclosure proceeds are distributed is not the concern of the borrower as long as the foreclosure results in the elimination of the debt, relieving the borrower of any further payment obligations.See Sharon McGann HorstKamp, MERS Case Law Overview, 64 Consumer Fin. L.Q. Rep. 458 (quoting Mortgage Elec.Registration Sys., Inc. v. Schroeder Am. Gen. Fin., Inc., No. 04cv-J942 (Wis. Cir. Ct., Branch 31, Milwaukee County June 23, 2005) (describing Wisconsin trial court's holding that "[r]es judicata will act as a bar to Lender to pursue any judgment because the Lender, is a party in privity with MERS according to the Mortgage.")). Even assuming arguendo that Plaintiffs have standing to assert this claim, Defendants are entitled to judgment as a matter of law because Plaintiffs have failed to demonstrate an issue of fact as to the propriety of the foreclosure.
 ii Failures of the MERS System, Generally
Plaintiffs argue that MERS failed to follow its internal rules for the disposition or transfer of interests, and that these failures result in nullification of the foreclosure. Plaintiff does not cite any authority for the proposition that the failure to follow internal guidelines affects a bank, mortgagee, or servicer's authority to foreclose.
Assuming arguendo that Plaintiffs have standing to challenge the foreclosure on *Page 17 
the basis of allegations of MERS' non-compliance with internal or external regulations, Plaintiffs have failed to present a cognizable claim supported by facts sufficient to defeat summary judgment on this issue. Specifically, Plaintiffs have failed to raise an issue of fact regarding whether Defendants breached any law or regulation, and to demonstrate that such a breach, if shown, could comprise a private cause of action to rescind the foreclosure sale and extinguish the homeowner's repayment obligation.
Plaintiffs contend that Exhibit 4 to their Objection, which is an uncertified copy of a United States Department of Treasury Consent Order, demonstrates that MERS engaged in wrongdoing to the extent that Plaintiffs' obligations pursuant to the Note and Mortgage changed. This Consent Order contains neither an admission of misconduct by MERS nor a finding of misconduct by the Department of Treasury. Further, the Consent Order contains no reference to any particular laws or regulations that apply to MERS that MERS could have violated. This agreement, which simply states that MERS will review its business operations and take quality assurance measures, does not present an issue of fact on Plaintiffs' claims that Plaintiffs were harmed and their obligations voided because MERS violated any law or regulation.
There is no dispute that Plaintiffs borrowed $250,000 for the purchase of the property and that Plaintiffs defaulted on their agreed repayment obligations. It strikes the Court as unfair to allow the borrowers to have benefited from the loan to purchase the property and thereafter escape their repayment obligations by arguing that the inter-institutional transfers and a vague agreement to design and implement quality control measures give Plaintiffs a complete defense to repayment. The Court recognizes that the current state of the economy has resulted in many foreclosures within and outside this *Page 18 
state. In this decision, the Court strikes a fair balance between the creditors' rights and the benefits to the borrower by adopting the position that the borrower's repayment obligation is not totally extinguished by the common commercial practice of the transfer of mortgage assets among financial institutions. The fact that, in many instances, the mortgage assets are bundled with others and used in connection with the sale of so-called "mortgage-backed securities," is not pertinent to the individual foreclosure questions raised in this case. Such securities have come into question by investors who purchased mortgage-backed securities. The plight of homeowners facing foreclosure, and that of investors who purchased investments secured by these mortgages, create two different public policy questions which this Court is not in a position to address with respect to the propriety of this individual foreclosure sale.
 iii Failure of the MERS System: "Robosigning"
In addition to the general grievance with the entire MERS system, Plaintiffs assert that one specific instance of misconduct on the part of MERS occurred in this case, and that this misconduct should result in the nullification of the foreclosure sale and of Plaintiffs' obligations. Again, the Court will assume arguendo that Plaintiffs have standing to bring this claim despite wide authority to the contrary. Even if Plaintiffs state a cognizable claim on this issue, Plaintiffs' argument on this issue is as factually unsupported as it is legally untenable.
Plaintiffs claim that the person who signed the MERS assignment to OneWest lacked the authority to do so. In support of this argument, Plaintiffs submitted "evidence" purporting to show that Erica Johnson-Seck, a person who executes *Page 19 
assignment documents on behalf of MERS in unrelated cases, was not authorized to sign. Plaintiffs submitted a 216-page deposition of Johnson-Seck that was taken during the discovery process of a different case, not involving these Plaintiffs or this property, in the Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Impeding the Court's review is the fact that Plaintiffs did not annotate this deposition or provide a precise citation to any deposition testimony to establish this otherwise unsupported allegation that the assignment in this case was executed by a person not authorized by the assignor.
In the present matter, the MERS assignment to OneWest was signed by J.C. San Pedro, not Johnson-Seck. (Compl. Ex. 3; Answer Ex. F.) The Court finds Plaintiffs' enigmatic references to Johnson-Seck irrelevant, and finds that Plaintiffs have failed to present an issue of fact as to San Pedro's authority. Likewise, the list entitled simply "Attorneys in Fact," without mention of when and for whom or what these people act as Attorneys in Fact, is insufficient to create an issue of fact on the authorization to assign issue.[7] The Court will not rely on an unauthenticated document, the source of which is unknown to defeat summary judgment. Consequently, the Court rules that the contention that MERS' assignments were executed by an unauthorized signatory is a mere conclusion or legal opinion that is insufficient to create a genuine issue of material fact to defeat Defendants' Motion for Summary Judgment. Liberty Mut.,947 A.2d at 872 (quotation omitted).
Plaintiffs undisputedly borrowed the funds to buy the property, arranged for the *Page 20 
property to serve as security for the Note, and subsequently defaulted by nonpayment in accordance with the terms of the Note. It is both undisputed and indisputable that Plaintiffs agreed that foreclosure would be the consequence of an uncured payment default. No holding of this Court should invalidate the foreclosure, which Plaintiffs agreed would ultimately be the consequence of nonpayment of the loan. See Porter, No. PC-10-2526, 2011 WL 1251246.
 CONCLUSION
It is undisputed that Plaintiffs defaulted. Neither the relevant agreements nor the law affect the enforceability of this obligation. The undisputed exhibits demonstrate a chain of title to the Note and Mortgage that is consistent with the right of OneWest to foreclose. Therefore, Defendants' Motion for Judgment as a Matter of Law on all Counts is GRANTED.
[1] Deutsche Bank is not a named defendant in this action.
[2] It is well settled that Rhode Island courts, "in construing the Superior Court rules[,] . . . look for guidance in the precedents of the federal courts, upon whose rules those of the Superior Court are closely patterned." Nocera v. Lembo,111 R.I. 17, 20, 298 A.2d 800, 803 (1973) (citations omitted) (construing Rule 4).
[3] Plaintiffs' Complaint contains the following exhibits:
 1. Pages 1, 2, 12, and 13 of the Mortgage and Page 4 of the Mortgage Rider (Ex. 1).
 2. The Mortgage pages previously submitted (erroneously labeled "Note") (Ex. 2).
 3. Assignment of the Mortgage from MERS to OneWest (Ex. 3).
[4] Defendants' Answer contains the following exhibits:
 1. Foreclosure Deed (Ex. A-1); Affidavits of Sale (Ex. A-2) and Non-Military Service (Ex. A-3); and the foreclosure advertisements verified by affidavit (Ex. A-4).
 2. Mortgage and Rider in their entirety (Ex. B).
 3. The Note (Ex. C).
 4. The Office of Thrift Supervision's Order placing IndyMac into conservatorship with FDIC (Ex. D).
 5. FDIC's Resolution reorganizing IndyMac into IndyMac Federal (Ex. E).
 6. MERS' assignment of the mortgage to OneWest (Ex. F).
[5] Plaintiffs' Objection and Supplemental Memorandum contain the following new materials:
 1. FDIC's Power of Attorney transferring its assets to OneWest (unmarked ex.).
 2. A list of names entitled "Exhibit A Attorneys-in-Fact" (unmarked ex.).
 3. A flow chart entitled "Dan Teri Securities Transaction Process Reverse Engineered Version 4.1" (Plaintiffs in the present matter are named Christopher and Dale) (unmarked ex.).
 4. A flow chart purporting to describe the travel of Plaintiffs' Mortgage and Note (unmarked ex.).
 5. The certifications of verified answers for some of Plaintiffs' attorney's other cases (unmarked ex.).
 6. Deposition of Erica Johnson-Seck in IndyMac v. Machado, No. 20 2008 CA 037322XXXX MB AW (Fla. Cir. Ct. Palm Beach County) (Ex. 1).
 7. An assignment of mortgage for a Woonsocket, Rhode Island property (not the subject property in this dispute) from MERS to IndyMac Federal (Ex. 2).
 8. Flow Charts purporting to describe the travel of the mortgage of other homeowners Plaintiffs' attorney represents in other cases (Ex. 3).
 9. A United States Department of Treasury Consent Order wherein MERS agrees to review its business operations and to take quality assurance measures (Ex. 4).
[6] Defendants' Supplemental Memorandum includes a flow chart purporting to trace the travel of Plaintiffs' obligations.
[7] A simple "Request to Admit" could have addressed this attempt to create a factual dispute, without citing to a deposition from a different case involving different parties and different facts.

 *Page 1